[No. 18693.   Department One.   January 9, 1925.]

AMERICAN SURETY COMPANY, *Appellant*, v. CHAS. E. LIND, *Respondent*.[1]

INSURANCE (17, 19)—AGENTS — EXTENT OF POWERS — NOTICE OF AUTHORITY—ACTS IN VIOLATION OF STATUTE. A local insurance agent whose only authority was to take written applications for indemnity bonds, has no power to agree upon a premium rate less than the company's scheduled uniform rates, filed in compliance with Rem. Comp. Stat., §§ 7076, 7077, 7118, 7147, and persons dealing with such agent are bound to know, as a matter of law, that such an agreement is beyond the scope of the agent's authority. (PEMBERTON, J., dissents.)

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered March 11, 1924, upon the verdict of a jury rendered in favor of the defendant, in an action on contract. Reversed.

*H. C. Thompson* and *John A. Kellogg*, for appellant.

*Sather & Livesey*, for respondent.

PARKER, J.—The plaintiff surety company seeks recovery of a balance claimed to be due it for premium upon a surety bond executed by it as surety for the defendant, Lind, to secure performance of a road construction contract entered into by him with the United States. A trial in the superior court for Whatcom county, sitting with a jury, resulted in a verdict and a judgment rendered thereon denying any recovery to the surety company, from which it has appealed to this court.

At the conclusion of the introduction of the evidence, counsel for the surety company timely moved the court to instruct the jury to render a verdict in its favor for the sum of $1,395 and interest; and, after the return of the verdict, timely moved the court to render a judgment in its favor for that amount notwithstanding the

[1]Reported in 232 Pac. 280.

verdict. The conceded and uncontroverted facts, the latter appearing almost wholly from Lind's own testimony, controlling of the question of the surety company being entitled to such judgment as a matter of law, may be summarized as follows:

In October, 1921, Lind tendered to the bureau of public roads of the agricultural department of the United States bids for the construction of a section of the so-called McKenzie River road in Oregon, and was by that bureau awarded a contract accordingly. The total contract price was $186,000. It was a condition of the specifications and the contract to be formally entered into, that Lind should furnish a bond with surety in a penal sum equal to one-half of the total contract price, securing the performance of the contract. The contract was accordingly formally entered into between Lind and the United States, he furnishing a bond as required, executed by himself as principal and the surety company as surety in the penal sum of $93,000. Lind was then a resident of Bellingham in Whatcom county, in this state. R. L. Kline was then the local agent at Bellingham of the surety company, but without authority to write or execute a bond of this nature for this amount. His only authority was to take written applications for such bonds upon blank forms furnished by the company to be signed by the applicant and then forwarded to the general manager and resident vice president of the surety company at Seattle for acceptance or rejection by him, and the execution of the bond by him as surety for the company, if the application be accepted.

Lind was well aware of this limited agency power on the part of Kline. He claims to have entered into an oral contract with Kline, the local agent, by which he was to pay premium to the company for its execution of the bond as surety, equal to one and one-half

per cent of the amount of the bond; that is, one and one-half per cent of $93,000, making $1,395; while the surety company claims that Kline did not have any authority to enter into any such contract and did not assume to enter into any such contract, but that Lind, by making application for and by accepting the bond, impliedly agreed to pay the uniform regularly established premium rate therefor, which was then one and one-half per cent upon the total price of the contract for the performance of which the bond was given to secure; that is, one and one-half per cent of $186,000, making $2,790; one-half of which, it is conceded, Lind has paid to the surety company.

Lind testified in substance that, at the time of the signing of the application and delivering it to Kline, he, Kline, agreed that the premium to be paid the surety company for the execution of the bond would be one and one-half per cent upon the amount of the bond, that is, $1,395. It is further shown beyond question, and not disputed in any way, that the regularly established premium rate upon such a bond is one and one-half per cent upon the total price of the contract for the performance of which the bond is given to secure. Lind also testified that, when he made application to Kline for the bond, he signed the application without any of the blank spaces being filled-in, with the understanding that Kline would fill them in with the proper data, and that this was afterwards done either by Kline or by someone at the general agency in Seattle.

The evidence is in serious conflict as to Kline assuming the making of a contract with Lind that the premium would be one and one-half per cent of the amount of the bond, and also as to the application being signed by Lind before the filling of the blanks therein. We, however, adopt Lind's version of these

facts in view of the finding of the jury. The application upon its face shows an express promise of Lind to pay the premium upon the bond in the sum of $2,790, that being one and one-half per cent of the contract price. The application was by Kline forwarded to the general manager and resident vice president at Seattle; and, in compliance with the data and information appearing thereon, after the filling of the blanks, the bond was executed by the surety company as surety and by Lind as principal and delivered to the proper authorities of the United States, as provided by the construction contract theretofore signed. The body of the bond does not seem to show the amount of the premium charged by the surety company.

A short time after the execution of the bond, the surety company presented to Lind a bill for the premium, claiming $2,790 due thereon. This, Lind insists, was the first intimation he had of the surety company claiming premium computed upon the contract price instead of upon the amount of the bond. Thereafter Lind paid the surety company $1,395; and refusing to pay more, this action was commenced by the surety company, seeking recovery of the balance of $1,395 claimed by it to be due. It is not claimed that the general manager and resident vice president or anyone connected with the surety company, other than the local agent, Kline, had ever intimated to Lind that the premium would be at other than the uniform regularly established rate; nor that anyone connected with the surety company, other than Kline, had any knowledge of the attempted making of the claimed premium rate contract between Lind and Kline, until after the execution and delivery of the bond.

In view of the very limited, apparent as well as actual, authority of Kline as agent of the surety company, it seems to us that it must be held, as a matter

of law, that any attempted contract between Lind and Kline, as agent of the surety company, looking to the fixing of the amount of premium upon the bond at one-half of such uniform regularly established rate was wholly without binding force upon the surety company. There is not only not the slightest affirmative showing of authority given by the surety company to Kline to make for it any such contract, but the legal presumptions are overwhelmingly against it. The provisions of our insurance code here applicable provide for the establishment of uniform regular premium rates and the filing of schedules thereof in the office of the state insurance commissioner, and also provide for penalties for the failure to observe such uniform rates in making charges for premiums. Sections 7076, 7077, 7118, 7147, Rem. Comp. Stat. [P. C. §§ 2939, 2940, 2980, 3009.] The surety company complied with these provisions by duly filing its schedule of rates with the insurance commissioner, to be computed, as here claimed by it, upon bonds of this nature, as here shown by a duly certified copy of its schedule of rates so filed with the insurance commissioner.

We are not here concerned with any claimed special premium rate contract entered into between Lind and the general manager and resident vice president of the surety company. Whether such a special contract rate with the general manager and resident vice president could be enforced by Lind as against the surety company, we need not here inquire. It is sufficient for present purposes for us to say that we are of the opinion that the attempted special premium rate contract between Lind and Kline, the local agent assuming to act for the company, was wholly without the agency authority of Kline, and that Lind must be held, as a matter of law, to have known that Kline had no authority to make any such a contract. It follows, as a matter of

law, that the surety company is entitled to premium for the issuance of the bond computed at the established uniform regular rate of one and one-half per cent upon the total contract price, that is, $2,790, less the $1,395 already paid.

The judgment of the superior court is reversed, and the cause remanded with directions to award to the surety company a judgment in the sum of $1,395, with interest, notwithstanding the verdict, in harmony with the conclusion we here reach.

MAIN, C. J., BRIDGES, and TOLMAN, JJ., concur.

PEMBERTON, J., dissents.