## BADGETT v. OKLAHOMA LIFE INS. CO.

No. 25448.   Nov. 5, 1935.

Rehearing Denied Dec. 10, 1935.

Second Petition for Rehearing Denied Feb. 18, 1936.

Hatcher & Bond, for plaintiff in error.

Melton & Melton, for defendant in error.

PER CURIAM. This was an action brought in the district court of Grady county by the plaintiff in error against defendant in error to recover on the life insurance policy issued by the defendant in error to one Fred L. Badgett, and in which policy plaintiff in error, Billie B. Badgett, was named as beneficiary. The cause was tried to a jury, and, at the close of the plaintiff in error's case, the defendant in error demurred to plaintiff in error's evidence, which was sustained by the court and judgment rendered for the defendant in error. From the order sustaining the defendant in error's demurrer to the evidence, plaintiff in error appeals. We will refer to the parties hereafter as they stood in the trial court.

The evidence in this case disclosed these facts: That one Fred L. Badgett, husband of plaintiff, was issued a life insurance policy by the Oklahoma Life Insurance Company, which was delivered to the insured on September 17, 1930. The policy No. 16421 showed that it was signed at the home office in Oklahoma City on the 15th day of September, 1930, and that it contained the following provisions:

"This policy is issued in consideration of the payment in advance of $293.60, being the premium to provide for the advance reserve, if any, required by law, and one year's term insurance for the year beginning on the 24th day of June, 1930, which is the first policy year, and in further consideration of the payment in advance of a renewal premium of the same amount on the anniversary of said date in every year thereafter during the continuance of this policy until the anniversary nearest insured's age eighty-five or until prior death of the insured."

The application for insurance attached to and a part of the policy shows that it was signed by the insured on September 17, 1930. The application further shows that the date of the application is June 24, 1930, and that the insured was 43 years, five months and 26 days old on that date. The policy took the premium rate based on the age of the insured as of June 24, 1930. The medical examination attached to and a part of policy showed that it was executed by insured and witnessed by the examining physician on June 25, 1930.

When the policy was delivered to the insured on September 18, 1930, the insured signed a receipt as follows:

"Received of and accepted from G. C. Newell, representing the Oklahoma Life Insurance Company, of Oklahoma City, Oklahoma, Policy No. 16421 for $10,000 insurance on my life in said company, the same being as applied for and for which I have paid in full the first premium."

Upon execution of the above receipt the insured paid the agent the first annual premium. The insured died an accidental death on the 14th day of August, 1931. Proofs of death were tendered to the insurance company. The company declined payment on the

ground that the annual premiums due June 24, 1931, had not been paid, and that the policy was no longer in force.

Plaintiff alleged that the insured accepted the policy believing that the second annual premium would be due on the 17th day of September, 1931, and that such was the representation of the agent, and that the clause in the application, "Date of this application 1930, June 24," was not in the application when the insured signed it, but was placed in the application without his knowledge or consent, and that the clause in the application, "Date of policy June 24, 1930," was not in the application when it was signed by the insured, but was inserted therein after it was signed and without his knowledge or consent. That there was a verbal understanding between the insured and the agent delivering the policy that the first year's premium was to pay the policy up to September 15, 1931.

Plaintiff further alleged that the provisions of the policy are that notice of premiums due shall be sent to the insured, and that no notice of premiums due June 24, 1931, was ever received by insured; that there was a general custom of the insurance company to give notice of premiums due 30 days in advance of the due date, and that this custom was binding upon, and estopped the company; that the company gave notice of premiums due on two other policies and the insured paid the premiums on such policies; that the company purposely failed to send notice of premiums due, and is therefore estopped and has waived its right to the payment of the premium.

Defendant answered, admitting the issuance of the policy and the payment of the first year's premium, and the death of the insured on August 14, 1931, and alleged that the premium due on June 24, 1931, had not been paid, and that the policy was not in effect at the date of the death of the insured; denied that the insured relied upon any representation of the agent Newell, and denied that such agent had any authority to make any representations or any verbal agreements not contained in the application and policy; denied that any changes had been made in either the application or the policy; but alleged that insured had full knowledge of all the terms and provisions; denied any general custom of sending notices of premiums due, and specially denied any custom existing between the company and the insured, Badgett, as to sending notices of premiums due.

There are three questions to be decided by this court.

(1) Did the application for insurance constitute an express contract that the company would send the insured notices of annual premiums due 30 days before the annual premium was due?

(2) Was it the general custom of the company to send its policyholders notice of annual premiums 30 days before such premiums became due?

(3) Did the alleged agreement between the insured and the soliciting agent, Newell, to the effect that the annual premiums under the policy involved would be payable on the 15th day of September of each year, instead of the 24th day of June of each year, as provided in the application and the policy, constitute an enforceable agreement, and that the policy involved should be reformed and declared to be in full force and effect at the date of the death of the insured on August 14, 1931?

1. 32 C. J. 1303, sec. 534, provides that:

"In the absence of a statutory or contractual provision to the contrary, where a premium is fixed and definite as to the time, place and amount of payment, no further notice requiring payment need be given to insured in order that a forfeiture clause may become operative."

And section 527 provides that:

"Terms and conditions in a contract of insurance which may operate to work a forfeiture are to be construed most strictly against the party seeking their enforcement, and where susceptible of more than one meaning, that meaning which is most favorable to insured should be adopted, but subject to this rule the meaning of the contract is to be ascertained under the ordinary rules of construction, nor can this rule operate to change the clear intent of an unambiguous contract."

There is no Oklahoma statute requiring notice of premiums due, and there is nothing in the authorities that in the least attempts to rule that the language of the application in the instant case constitutes an express contract for premium notices. Plaintiff contends that that part of the application which reads as follows:

-----------------------------------------------

My residence is 2024 S. 14th Street, City of Chickasha, Grady County, State of Oklahoma.
My place of business is 15th & Grand, City of Chickasha, Grady County, State of Oklahoma.
Send premium notices

-----------------------------------------------

—constitutes a clear request or demand upon the company to send premium notices.

The court finds that the above clause does

not constitute an expressed agreement to send notices of premiums due. The policy involved expressly fixes the definite amount of premium to be paid and a definite time of payment, and the place at which payment shall be made. There is nothing uncertain or indefinite as to these provisions. The court finds that there is no contractual obligation to send notice of premiums due under the terms of the policy involved herein. The court cannot change the clear intent of an unambiguous contract.

2. Plaintiff contends that the evidence shows a general custom of the company to give premium notices to its policyholders, and that this alleged general custom was binding upon the company as to the policy involved, and a failure to give notice of the annual premium due June 24, 1931, did not termi nate the policy as is expressly provided in the policy and the application. Several authorities are cited by plaintiff in support of this contention; however, we do not believe such authorities are pertinent in this case. We believe that the following citation of the law is applicable hereto:

"Usage, on the part of the insurance company of giving notice of the day of payment, and the reliance of the assured upon having such notice, is no excuse for nonpayment, unless such usage and custom is one especially as between the company and the insured, and existed so long as was of such a character, as between the company and insured, as to induce insured to believe a forfeiture would not be insisted upon, unless notice was first given."

We find that there was no custom existing between the company and the insured as to induce the insured to believe that a forfeiture would not be insisted upon unless notice was first given. In the case of Union Mutual Life Insurance Co. v. Daniel A. Mowry, 96 U. S. 544, 24 L. Ed. 674, in the syllabus, the court said:

"Representations by an insurance agent to induce an applicant to take a policy, that the company would notify him in season to pay the premiums, and that he need not give himself any uneasiness on the subject, do not operate as an estoppel, where no such notification was given, against insisting upon the forfeiture of the policy, by reason of nonpayment of the premium."

3. The plaintiff insists that the testimony of Mrs. Badgett as to the conversation between the insured, Badgett, and the agent, Newell, in September, 1930, some few days before the policy was delivered, to the effect that the annual premiums on the policy would be payable in September and not in June, and the fact that the policy and application, when executed and delivered, provided in expressed terms that the annual premium should be paid on June 24th, operated as a fraud on Badgett, and by reason thereof the policy should be reformed and should be made a policy with the annual premiums payable September 15th of each year instead of June 24th of each year. The testimony in this matter attempted to contradict and vary the expressed terms of the contract as fixed by the application and policy by oral conversations and negotiations. The record does not disclose any evidence of fraud, but simply an effort to contradict and vary the expressed terms of the written contract.

"In the absence of fraud or mistake the insured cannot claim ignorance of the contents of the policy." Brown et al. v. Connecticut Fire Ins. Co. of Hartford, Conn., 52 Okla. 392, 153 P. 173.

"An applicant for insurance who accepts a policy, the provisions of which are plain, clear and free from all ambiguity, is chargeable with knowledge of its terms and legal effect. It is the duty of the assured to read and know the contents of the policy before he accepts it, and where he fails or neglects to do so he is estopped from denying knowledge of its terms and conditions, unless he alleges and proves that he was induced not to read the policy by some trick or fraud of the other party." Liverpool, London & Globe Ins. Co., a Corp., v. T. M. Richardson Lumber Co., 11 Okla. 579, 69 P. 936.

"A contract in writing, if its terms are free from doubt or ambiguity, must be permitted to speak for itself, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance." Brown et al. v. Connecticut Fire Ins. Co. of Hartford, Conn., 52 Okla. 392, 153 P. 173.

"It is well settled that the execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact." Lindsay State Bank v. McGrew et al., 96 Okla. 74, 219 P. 904.

In Union Mutual Life Insurance Co. v. Daniel A. Mowry, supra, 24 L. Ed., in the footnotes, we find that:

"A written contract generally contains the deliberate, definite and final agreement of the parties, and therefore parol evidence of negotiations prior to the execution of the written instrument is inadmissible to vary or

contradict the writing." Harnor v. Graves, 15 C. B. 667.

"The testimony as to the promises by the local agent was properly excluded. As there was no ambiguity it was not competent as bearing upon the meaning of the policy, and it is well settled that such testimony is not competent for the purpose of contradicting or modifying the terms of the policy, or for showing that these have been waived." Sellars v. Continental Life Ins. Co. (C..C. A.) 30 F. (2d) 42.

In our opinion the effective date of the insurance is not, in our judgment, in any way uncertain, and the written contract is not ambiguous. The offer of the plaintiff to show an oral agreement by the insured and the soliciting agent of the defendant was properly denied.

After a full consideration of the entire case, we are forced to the conclusion that the trial court committed no error in sustaining the demurrer to the evidence, and the case should be affirmed, and it is so ordered.

The Supreme Court acknowledges the aid of District Judge F. Hiner Dale, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by this court.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.