## PRUDENTIAL FIRE INS. CO. v. STANLEY et al.

No. 30434. Nov. 24, 1942.

*131 P. 2d 88.*

Lloyd J. Mullen and John A. Brett, both of Oklahoma City, for plaintiff in error.

Miley, Hoffman, Williams, France & Johnson, of Oklahoma City, for defendants in error A. O. and Golda Stanley.

Murray Gordon, of Oklahoma City, for defendant in error W. P. Westfall.

DAVISON, J. This action was instituted and successfully prosecuted in the district court of Oklahoma county by A. O. Stanley and Golda Stanley, as plaintiffs, against the Prudential Fire Insurance Company and W. P. Westfall, as defendants, to recover on a policy of fire insurance issued by the first named defendant. The loss occurred on January 23, 1939. The insurance policy had been issued on January 27, 1938, and covered a period of one year; however, the period of coverage as described in the policy began at noon on January 22, 1938, and expired at noon on January 22, 1939. Thus the policy apparently expired prior to the loss.

The plaintiff proceeded on the theory that the period of coverage as specified in the policy was erroneous and sought a reformation of the policy. The cause was tried to the court without the intervention of a jury. A reformation was ordered bringing the date of the loss within the period of coverage and judgment was rendered against the insurance company.

The insurance company has appealed, appearing herein as plaintiff in error. We shall continue to refer to the parties by their trial court designation.

The principal contention of defendant company is that the portion of the trial court's judgment directing a reformation is inadequately supported by the evidence. Its position is that the evidence clearly and conclusively establishes that the period of coverage as described in the policy was correct. The plaintiffs, in support of the judgment of the trial court, urge that it can and should be sustained on either of two theories: First, that under the facts in the case no insurance was in force and effect prior to the date that the policy was actually issued, that is, January 27, 1938, and that the policy period of coverage extended until January 27, 1939; second, that if the period of policy predated the formal issuing thereof, it commenced on January 24, 1938, and ended on January 24, 1939, because, as they assert, the evidence establishes that no application for insurance was made and presented by them to the company before that date.

From our examination of the record we have concluded that the decision of the trial court should be approved upon the latter theory. Our conclusion in this respect eliminates the necessity of consideration of the first mentioned alternative basis for affirmance.

It is settled law in this jurisdiction that the hazard of loss can be assumed by an insurance company prior to the execution by it of a policy. Metropolitan Casualty Insurance Co. of New York v. Heard et al., 178 Okla. 461, 63 P. 2d 720; DeNoya v. Fidelity Phoenix Ins. Co., 110 Okla. 235, 237 P. 125; McCracken v. Travelers Insurance Co., 57 Okla. 284, 156 P. 640.

The binding agreement to insure may, as stated in the above-cited cases, rest entirely in parol; however, in the case at bar a formal application for insurance was prepared by the plaintiffs and presented to the insurance company.

The company takes the position that immediately upon the presentation of the application for insurance, it assumed the risk and bound itself to pay in the event of loss. It does not contend, however, that it assumed any risk prior to the time. Indeed, such a contention could not be sustained if made under the proof offered in this case by the company. The property here involved was farm property. One of the company's representatives, who acted for the company in the transaction involved in the case at bar, appeared as a witness in behalf of the insurance company and testified in substance that the application was essential to insurance on this type of property. We quote:

"Q. Any requirements with reference to an application for a policy of insurance before you would issue the policy? A. Our company requires an application to be made on farm business, it is unusually hazardous."

The agent did not testify that she undertook to or did bind the company prior to the receipt of the application.

The application as prepared and signed by the plaintiffs herein requested insurance for a period of one year commencing on January 22, 1938. This application was subsequently used in drafting the formal policy and the dates in the policy corresponded with the dates in the application. The Stanleys assert, however, that the date was an error and explain its presence in the application in the following manner:

The Stanleys, at the time of the negotiations for insurance, were living in the property which was described in the insurance policy now before us. The property was situated southeast of Oklahoma City. It was located on a 40-acre tract of land. Mrs. Stanley was working in an office in Oklahoma City. During the latter part of the week which ended Saturday, January 22, 1938, she secured from one Mr. Roger Coates a printed form to be used in applying for insurance. She took the form home with her and her husband (co-plaintiff herein) with her assistance "filled in" the application. This was done on Saturday evening, January 22, 1938, and the application purported to request insurance coverage as of and from that date. However, the Stanleys did not return to the city with or present the application on that date, but, on the contrary, waited until the following Monday, January 24, 1938, when Mrs. Stanley presented the application to the insurance agency representing the defendant company.

The foregoing constitutes an epitomization of the testimony of Mrs. Stanley with respect to the time when the application was filled out on the date on which it was presented to the defendant company through its authorized insurance agency. With respect to the time when the application was filled out it is corroborated by the testimony of Mr. Stanley. However, he did not accompany Mrs. Stanley when the application was presented to the defendant company and therefore does not corroborate her with reference to the date of presentation other than by the implication which arises from the fact that the application was filled out at the home of the plaintiffs Saturday evening.

This testimony by the Stanleys respecting the date of presentation of the application is in direct conflict with evidence produced by the defendant company consisting of testimony of witnesses connected with the company who employed memoranda to refresh or assist their recollection as to dates.

In presenting the case on appeal the

insurance company takes the position that the latter evidence is more reliable and should be accepted for the purpose of establishing the controlling facts.

As is true with respect to many other questions relating to the probative force of evidence, a great deal of argument can be advanced in support of the positions of the respective parties. Neither of the parties produced witnesses on the point who were entirely disinterested. Nor did either of the parties produce evidence that was infallible. Errors can be made in memoranda and become the basis of erroneous testimony, and, on the other hand, memory of an insured as to the details of an isolated insurance transaction is not necessarily infallible, although it might seem more probable that a person dealing with only one such transaction would be more likely to recall its details than those who deal with hundreds in the course of a year. These considerations lead us into a field of speculation which comprehends factors impossible of precise evaluation.

The question of the probative force of evidence is in the first instance one for the trial court. There an opportunity to observe the demeanor and conduct of the witnesses is afforded which is unavailable in this court. That important element is here regarded as a factor to be taken into consideration when we are called upon to disturb the determination of the trial tribunal on a question of fact resolving a conflict in the testimony of witnesses for the opposing parties.

In connection with the alleged insufficiency of the proof, the defendant company invokes the rule prevailing in this jurisdiction that one seeking the reformation of an instrument on the grounds of mistake must produce full, clear, unequivocal and convincing evidance. Home Insurance Co. v. Akers, 96 Okla. 232, 221 P. 493; see, also, 23 R.C.L. 367; 29 Am. Jur. 246, 247; annotation 26 A.L.R. at 498.

It is worthy of note that this rule does not require that proof meeting the foregoing requirements must also be uncon-

tradicted as distinguished from evidence contradictory within itself. Notes 65 A.S.R. 495; 5 L.R.A. 152; 19 Ann. Cas. 350.

It is the purpose of the rule to prevent reformation of instruments on loose, contradictory, and unsatisfactory evidence.

Reiterating the salient points of the evidence before us with special reference to the application of the foregoing rules thereto, it is to be observed that: (1) The parties are in accord that the insurance was to be in force for a period of one year. (2) The evidence is positive and uncontradicted that the year of coverage did not commence before the application was submitted. (3) The plaintiffs' evidence that the application was not submitted until January 24, 1938, is clear, definite, and positive. Its convincing character must be determined by its effect upon the judicial mind reviewed in the first instance from the standpoint of the trial court. As was said in 23 R.C.L. 369:

". . . Whatever the form used to express the degree of proof required, the only question is: Does it satisfy the mind of the court? When the mind of a judge is entirely convinced upon any disputed question, whether of fact or law, he is bound to act on the conviction. . . ."

The trial court was satisfied that the requirement had been met in the case at bar and the judgment rendered expresses the conviction. (4) The fact that the application was submitted on January 24, 1938, establishes the mutuality of the mistake and it follows that plaintiffs erroneously allowed the wrong date to remain in their application. The defendant company emphasized the error and joined therein by placing the erroneous date in the policy. Both had equal opportunity to know the true date of the presentation of the application and either could have avoided the error.

One other point claims brief treatment. The defendant company developed on cross-examination that the plaintiffs had not carefully read their

policy after receiving it. This omission does not preclude granting the relief afforded by reformation. In 23 R.C.L. 351, it is said on this point:

"The fact that insured accepted a policy of fire insurance without noticing a mistake is generally held not to preclude him from having the mistake corrected, even though he failed to read the policy over or carelessly read it. Policies of fire insurance are rarely examined by the insured. The same degree of vigilance and critical examination would not be expected or demanded as in the case of some other instruments. . . ."

See, also, 29 Am. Jur. 244.

We are unable to say from the printed record before us that the plaintiffs' evidence failed to clearly and convincingly establish an error in the date the application for insurance was presented. Nor can we say that the trial court's determination that the burden of proof in establishing such error had been met was against the clear weight of the evidence.

As we have previously intimated, there is no dispute that the insurance contract was to remain in force for a period of one year. The plaintiffs established that that year did not commence before January 24, 1938. It follows that the policy was in force on January 23, 1939, the date of the loss.

It is settled in this jurisdiction, as pointed out by the defendant company, that the coverage of a policy may antedate the date of the issuance of the formal policy, if the parties so intended and contracted. Such a preliminary contract may even rest in parol, but like all other contracts it must and does embrace an offer and an acceptance thereof. United States Fire Insurance Co. of New York v. Rayburn, 183 Okla. 271, 81 P. 2d 313; Metropolitan Casualty Insurance Co. of New York v. Heard, 178 Okla. 461, 63 P. 2d 720; Fidelity & Casualty Co. of New York v. Curtis Brown Co., 105 Okla. 136, 232 P. 99; Massachusetts Bonding & Insurance Co. v. Vance, 74 Okla. 261, 180 P. 693, 15 A.L.R. 981; Dorman v. Connecticut Fire Insurance Co., 41 Okla. 509, 139 P. 262; Shawnee Mutual Fire Insurance Co. v. McClure, 39 Okla. 535, 135 P. 1150, 49 L.R.A. (N. S.) 1054; Mutual Life Insurance Co. v. Young, 23 Wall. (U. S.) 85, 23 L. Ed. 152; 29 Am. Jur. 153.

In this case the offer was in writing. While it was dated January 22, 1938, and requested insurance from and after that date, it was not, according to Mrs. Stanley, submitted to the agent of the company until January 24, 1938. No acceptance of the offer was possible until the offer was made, thus according to her version the year during which the property was to be insured could not have started until January 24, 1938, which brought the loss within the period of the policy.

The plaintiffs so drafted their petition as to urge that the coverage of the policy was from January 27, 1938, to January 27, 1939. In doing so they assumed an unnecessary burden, but their assumption of such burden did not preclude the possibility of relief on the theory herein approved. Their recovery is approved upon the theory upon which we have reviewed the evidence.

The defendant company also invokes the parol evidence rule, sometimes known as the rule of merger and exclusion. The rule has no application to evidence introduced in actions for the reformation of instruments for the purpose of establishing a mutual mistake of the parties at the time of the execution of the contract. The exclusion of such situations from the rule is recognized in the case of Badgett v. Oklahoma Life Insurance Co., 176 Okla. 86, 54 P. 2d 1059. See, also, 20 Am. Jur. 953 and 23 R.C.L. 366.

The second ground upon which defendant seeks reversal of this judgment is based upon the contention that this policy was void by reason of the fact that in executing the application certain material facts were concealed from defendant. Upon this basis defendant urges that the policy was void because it provided the policy should be void

if "the subject of the insurance be personal property and be or become encumbered by a chattel mortgage." Also, by reason of the policy provision stating:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

Plaintiffs' application, in answering the inquiry as to whether any of the property, real or personal, was encumbered, showed only the real estate mortgage, and made no reference to the chattel mortgages and conditional sales contracts outstanding at the time against certain of the household goods.

Two of these mortgages appear to have been executed on goods purchased long after the application for insurance was made. The mortgage to Crockett-Mugg Furniture Company was given to cover certain furniture bought by plaintiffs in September, 1938, and provided for installment payments. This is also true as to the mortgage for $216.66, given September 14, 1938.

The conditional sales contract to Moody's Incorporated was made in March, 1937, and covered a range, washer, ironer, and radio. These items were not included in the proof of loss as a part of plaintiffs' loss. The contract and note for installment payments expressly stated that title to this property remained in the seller until paid in full. It may be mentioned here that defendant cannot assert plaintiffs concealed or misrepresented the facts concerning mortgages which were not even in existence at the time application for insurance was made. Further, no claim was entered for the loss of these goods in the fire.

Of the other two mortgages, the first was for $100 and covered household goods bought under installment payments. The affidavit of the mortgagee, Reich, shows this first mortgage was canceled November 19, 1937, but was never released. On this same date plaintiffs executed a new mortgage securing the installment payments. Reich's affidavit shows this note was canceled February 4, 1938, and the mortgage was of no further force or effect, and should have been released. Plaintiffs' testimony shows that this debt was paid, and that they merely neglected to mention the fact that it was outstanding, probably because they contemplated payment of same immediately. In fact, there was only $45 unpaid balance due on the mortgage debt at the time the application for insurance was made.

This question has been passed upon by this court numerous times. It is true that the general rule, supported by much authority, is that a provision in an insurance policy against encumbrances at or after the time of insuring voids the policy. The record shows that the encumbrances plaintiffs failed to mention were discharged shortly after the policy became effective. The affidavit of the mortgagee that his mortgage had been paid and satisfied bears this out. The evidence likewise discloses that plaintiffs sustained a loss of approximately $2,300, only $1,000 of which was covered under the policy.

The rule which voids a policy of insurance, under these conditions, is a rule necessary for the protection of insurers from the unscrupulous, and it is held to be a valid and proper provision of insurance contracts. However, in instances such as we are faced with here, it is apparent that the very reason for the rule, i.e., protection of the insurer, has been done away with by the conduct of the parties themselves. The facts do not reveal that any of the property lost for which recovery was sought was mortgaged by plaintiffs after the policy was in force.

It is conceded by the insurance company that, in this jurisdiction, contracts of insurance of the character now before us are divisible insofar as the features covering real and personal

512

property are concerned, and that some defect in the insurance on one class of property which voids the same as to that class does not void the policy as to the other class. Upon reason it would seem to follow that the same holding should obtain in cases where various items of the same class of property are separately enumerated, and indeed many courts, including this one, have so held. Arkansas Insurance Co. v. Cox, 21 Okla. 873, 98 P. 552, 20 L.R.A. (N. S.) 775; 29 Am. Jur. 200. However, plaintiffs' recovery in this case is not dependent on the divisibility of the contract.

Insurance on personal property, as, for instance, household goods, does not depend for its continuation on keeping such isolated from articles of property which are not covered by insurance, nor does the existence of insurance destroy the power of sale or disposal, although it may cancel the insurance as to any article sold.

To illustrate, suppose a contract of insurance does not or cannot cover mortgaged property. A householder obtains insurance on his household goods. Thereafter he buys on time payment an electric iron which is mortgaged to the vendor. He brings the iron into his home and permits it to be in the same house with his insured property. Does he thus contaminate the insured property and lose his insurance? Or does the sale or encumbrance of some single item of the property destroy his insurance on property not affected by the transaction? To so hold would create confusion in a line of business, that is, the insurance business, where contracts are sold as a commodity, and destroy the protection intended to be afforded.

The insured in this case have dealt with certain items of their property in such a manner as to make the coverage thereof by the insurance doubtful, but they make no claim for the loss or destruction of that property. They have treated them as uninsured items of property. They were properly so considered by the trial court. Nor do we

find any oversight in connection with the procurement of the insurance to which the maxim "de minimus non curat lex" would not constitute a perfect answer.

Under these circumstances we are of the opinion that the provision in this policy against encumbering personal property covered by the policy without making this fact known to the insurer is of no consequence.

The presence in this litigation of W. P. Westfall is explained by the fact that he held a real estate mortgage on the premises. His interests have been taken care of in the judgment of the trial court and no independent dispute exists in connection therewith.

The judgment of the trial court is affirmed.

Supersedeas bond having been executed herein, and the plaintiffs having asked judgment thereon, such judgment is accordingly rendered in behalf of plaintiffs.

WELCH, C. J., and OSBORN, GIBSON, HURST, and ARNOLD, JJ., concur. CORN, V.C.J., and BAYLESS, J., dissent. RILEY, J., absent.