## TRAVELERS INDEMNITY CO. et al. v. COLLIER.

No. 34226.   Oct. 30, 1951.

*237 P. 2d 153.*

Memminger & Cook, Atoka, and Eugene S. Wells, Oklahoma City, for plaintiffs in error.

I. L. Cook, Atoka, and France, Johnson, Gordon & Cook, Oklahoma City, for defendant in error.

GIBSON, J. This is an appeal from a judgment by the district court of Atoka county rendered on a jury verdict, in an action wherein plaintiffs sued defendant for money alleged to be due as a balance of certain insurance premiums earned on policies issued by plaintiffs.

The parties appear here in the same order as in the trial court, and will be referred to as plaintiffs and defendant.

Two separate suits were filed. In one the Travelers Insurance Company, a corporation, sued J. Claud Collier, defendant, for premiums due on a Workmen's Compensation policy in its first cause of action, and in its second cause for premiums due on a Garage Liability policy. On the same date the Travelers Indemnity Company, a corporation, filed a similar action against the defendant for a balance of premiums due on its Garage Liability policy. Both companies executed the last-named policy, but each assumed liability for separate items of coverage.

By order of the trial court the two cases were consolidated. It was stipulated by the parties that if defendant was indebted to plaintiffs, the debt was in the amount prayed in these petitions.

In both cases plaintiffs claim that the several policies were issued to and accepted by defendant and that defendant paid an estimated advance premium as stated in the face of the policies, and that he contracted to pay to plaintiffs a total adjusted premium to be determined by a pay roll audit of defendant's total remuneration or wages paid to its employees after the expiration of the year covered by the policies; that the payment made at the delivery of the policy was not a full payment of the premiums and that the earned premiums on the total of defendant's payroll was greater than the down payment, and therefore there was the unpaid balance for which judgment was prayed.

Defendant admits that he accepted the policies but says that at the time of acceptance he had a definite oral understanding with plaintiffs' agent that the down payment made was for the full amount of the premium, and that plaintiffs accepted the same as full payment of his indebtedness on the policies. Defendant further alleges that said oral agreement was a part and parcel of the agreement entered into at the time of the delivery of said policies.

Plaintiffs filed replies wherein it was alleged that plaintiffs' agent had no authority to make any agreement contrary to the provisions of the policy, and if such agreement was made it was ultra vires, and further, that it was defendant's duty to read the policies and that he was bound by its provisions, having enjoyed its benefits for the full term.

From judgment for defendant, plaintiffs appeal.

For reversal the plaintiffs urge, first, that their soliciting agent did not have authority to reduce the amount of premiums fixed by law on the policies issued to defendant.

It is admitted by defendant that he accepted the written policies; that on the Workmen's Compensation policy he paid by check the sum of $129.28, which is the exact amount set forth on the

face of the policy under the designation "Estimated Advance Premium", and that he held such policy for more than a year, which was the term of the policy.

The same admissions were made as to the Garage Liability policy except that the amount paid upon delivery of the policy was $72.45. That amount is designated on the face of this policy as "Total estimated advance premium for Policy." Thus it appears that defendant had full benefits of both policies for the entire policy year.

The Workmen's Compensation policy contained the following provisions, which are pertinent to the issues presented:

"A. The premium is based upon the entire remuneration earned, during the Policy Period, by all employees of this Employer engaged in the business operations described in said Declarations . . . . At the end of the Policy Period the actual amount of the remuneration earned by employees during such Period shall be exhibited to the Company, . . . and the earned premium adjusted in accordance therewith at the rates and under the conditions herein specified. If the earned premium, thus computed, is greater than the advance premium paid, this Employer shall immediately pay the additional amount to the Company, if less, the Company shall return to this Employer the unearned portion, but in any event the Company shall retain the Minimum Premium stated in said Declarations . . . .

"L. No condition or provision of this Policy shall be waived or altered except by endorsement attached hereto signed by the President, a Vice-President, Secretary, or Assistant Secretary of the Company, or by a Registrar of the Company when specially authorized so to do by printed endorsement attached hereto; nor shall notice to any agent, nor shall knowledge possessed by any agent, or by any other person, be held to effect a waiver or change in any part of this contract."

Similar provisions were printed in the Garage Liability policy. The rates were set forth in the declarations of each policy. There is no endorsement, appearing on either policy, purporting to change in any respect these printed conditions of the policies.

The testimony as to the negotiations leading up to the execution and delivery of the policies was in conflict. The agent for the plaintiffs testified that the advance premium was computed on an estimated $6,000 annual pay roll but that he told the defendant's representative that the premium would be based on the payroll for the policy period and that an audit would be made in about one year.

For defendant, Sam A. Brown testified that he was administrative executive and bookkeeper of defendant and that he conducted the negotiations for the policies with plaintiffs' agent.

The defendant testified that he had been in business for 20 years; that he did not read the policies; that he signed the two checks in evidence; that it was his understanding that they were for one year's premium and he was greatly surprised when a man came to audit his books about 15 months after the policies were written and later he received the statement for the balance of the premium; that when the policies were delivered the plaintiffs' agent said "This is all the premium."

At the conclusion of the testimony the plaintiffs moved the court to instruct the jury to find a verdict in favor of the plaintiffs and against the defendant. This motion was overruled and exceptions allowed plaintiffs. Plaintiffs preserved this alleged error in their motions for new trial, which were overruled and exceptions allowed.

There is no evidence in the record to show that Mr. Hudspeth was other than a soliciting agent for plaintiffs. With his limited powers as such an agent he had no authority to make an insurance contract other than the written contract submitted. He had no authority to fix rates or premiums other than those shown in the policies.

In dealing with this agent defendant knew that the agent was taking defendant's application, which was to be submitted to plaintiffs, and that he would receive the policies at a later date. He did receive them. Mr. Brown read the policies, studied them, and discussed with Mr. Hudspeth Paragraphs "A" and "L". "A" specifically provided for computation of the premiums on the basis of a payroll audit, and "L" specifically limited the power of representatives of the company with reference to waiving or altering any of the provisions of the policies. With such knowledge of the limitation of the soliciting agent's authority, defendant relied at his peril on any act or statement of the agent in excess of his authority. Hartford Fire Ins. Co. v. McAvoy, 177 Okla. 60, 57 P. 2d 242. When such limitation of the agent's authority was known or should have been known to the defendant, an oral representation beyond and opposed to the specific provisions of the policies was not binding upon the insurance companies. American Surety Co. v. Lind, 132 Wash. 326, 232 P. 280.

In Penman v. St. Paul Fire & Marine Ins. Co., 216 U.S. 311, 54 L. Ed. 493, the court was dealing with a policy containing limitations on the powers of agents similar to the case at bar. In the body of the opinion, the Supreme Court said:

"We think also that the policy furnishes the only way by which its terms can be waived. . . . It guards against any acts of waiver of its conditions or a change of them by agents. It provides that such waiver or change 'shall be written upon or attached' to the policy. The company could have used no words which would have been more explicit. There is no ambiguity about them. Parol testimony was not needed nor admissible to interpret them. They constituted the contract between the company and the insured. No agent had power to change or modify that contract except in the manner provided."

"A contract in writing, if its terms are free from doubt, or ambiguity, must be permitted to speak for itself, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance." Badgett v. Oklahoma Life Ins. Co., 176 Okla. 86, 54 P. 2d 1059; California State Life Ins. Co. v. Bailey,. 176 Okla. 153, 54 P. 2d 647; Brown v. Connecticut Fire Ins. Co., etc., 52 Okla. 392, 153 P. 173.

It was error for the trial court to overrule plaintiffs' motion for a directed verdict.

Reversed and remanded for a new trial.

HALLEY, V.C.J., and CORN, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. WELCH and DAVISON, JJ., dissent.

DAVISON, J. (dissenting). I cannot agree with the reasoning, nor with the conclusion reached in the opinion of the majority of the court, and desire to express my reasons therefor. It is my opinion that the rules of law therein stated are sound and are well established in this jurisdiction but that they are not applicable to the facts in the case at bar.

This appeal grows out of two actions in the lower court, one of which contains two causes of action, which were consolidated for trial. Since the facts determinative of all issues in the separate causes of action are identical, only one need be specifically referred to. The action is one for the recovery of the premium for one year upon a liability insurance policy computed upon the basis of a percentage of defendant's pay roll as provided in said policy, less, however, the amount paid plaintiff by defendant at the time of the delivery of the policy. The total amount sought to be recovered is $683.98, being the difference between the computed premiums of $885.71 and the amount paid at time of delivery of $201.73.

The majority opinion is founded primarily upon the rule of law set out in

syllabus numbered 3 therein, to the effect that a written contract cannot be varied by parol evidence except in certain instances. But the application of that rule is in all instances absolutely dependent upon the freedom of terms of the written contract from doubt and ambiguity. The quotation from previous cases, which constitutes the next to last paragraph of the majority opinion, first recognizes this requirement before stating the rule. The conclusion reached by the majority by the application of that rule presupposes the "written contract" to be the insurance policy standing alone and complete within its four corners and therefore free from doubt and ambiguity. But the record discloses that at the time of the delivery of the insurance policy, and as an integral part of the transaction and in payment of what he thought was the entire year's premium, defendant gave plaintiff's agent a check for $72.45, on the face of which was written:

"This check is in full settlement of account as shown hereon. Endorsement Constitutes Receipt in Full.
Policy No. FG 5916519
        Pre. for One Year from
        5 December 1945 _____$72.45"
This check was endorsed and paid.

Section 158 of Title 15 O.S. 1941, provides:

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

On numerous occasions, this section has been presented to this court for interpretation. Its meaning is clearly explained in the following statement in the case of Mid-Continent Life Ins. Co. v. Goforth, 193 Okla. 314, 143 P. 2d 154:

"It is the general rule that instruments executed at the same time, and for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together, as if they were as much one in form as they are in substance. The principle is applicable to cases where negotiable in-

struments and a written agreement are executed at the same time by the same parties. The resulting contract is to be determined by a construction of both in accordance with conventional rules. . . .

"We have held many times that where two instruments, though not executed at the same time, refer to the same subject matter and on their face show that each was executed to carry out the intent of the other, both should be construed as one contract."

The agent of plaintiff, who accepted the check, was the one authorized to and who did take the application, deliver the policy and accept the payment of premiums. In the case of Maryland Casualty Co. v. Cowan, 185 Okla. 304, 91 P. 2d 756, it was held that the payment of premiums to the local agent although never received by his principal was payment to the insurance company. The Supreme Court of South Carolina, in the case of Galphin v. Pioneer Life Insurance Co., 157 S. C. 469, 154 S. E. 855, held that:

"Insurer's agent having authority to deliver life policy and collect premium possessed implied authority to vary mode and time of payment."

It is my opinion that the local agent, having accepted the check with the provision that it was in payment of the premium in full and having delivered the policy at the same time, was acting within the scope of his authority. It is my further opinion that, under the provisions of the above-quoted statute, the written contract of the parties consisted of the insurance policy and the check, each of which bore the signature of both parties; that there was therefore an ambiguity in the contract which permitted the introduction of parol testimony for the determination of the intent of the parties and which became an issue of fact to be presented to the jury. The record indicates that defendant would not have taken out the policy had he thought that the premium would be more than he had paid.

If there was not a meeting of the minds of the parties, no contract was

entered into and defendant would probably be entitled to a return of the consideration paid, but that question is not before us. Nor are we called upon to determine any question regarding the rights of third parties entitled to benefits under the policy. Both parties present the case upon the theory that a contract was entered into, but defend their respective positions upon what the provisions of that contract were. Being a contract, then, wherein there was an ambiguity between the statement in the check and the statement in the policy as to what agreement was reached relative to the amount of premium to be paid, that became a question of fact to be determined by a jury. In the case of Mitchell v. Vogele, 125 Okla. 176, 256 P. 906, the rule is stated as follows:

"The determination of the meaning of a written contract is ordinarily a question of law for the court and not cne of fact for the jury, but where there is a dispute between the parties to the contract as to what was intended by certain provisions in the contract and the contract is susceptible of more than one construction and this issue is properly raised by the pleadings, the construction of the contract then becomes a mixed question of law and fact, and parol testimony is admissible to show what the intentions of the parties were when they entered into the contract and is determinable by a jury under proper instructions of the court."

In the case at bar, the verdict of the jury was for defendant.

There is some argument advanced in the briefs of the parties that the contract, if providing for the amount of premium contended for by defendant, is unlawful because it is violative of section 138, Title 36 O.S. 1941. There is no testimony in the record tending to show the defendant guilty of fraud or inequitable conduct, and, under such circumstances, this court, in the case of National Fidelity Life Ins. Co. v. Gerard, 175 Okla. 219, 52 P. 2d 1, said:

"We think the cases cited by the company are not controlling in this case. Our statute does not provide that a policy issued in violation of the above statute shall be void, but it does make it a misdemeanor for any person to knowingly receive any valuable thing, special favor, or advantage whatever (36 O.S. 1941 §196), and it makes a violation of any of the provisions of the article on insurance an offense punishable by fine (36 O.S. 1941 §20). There was no evidence introduced that tended to prove that the assured knew that the annuity payment was more than he was entitled to. The average citizen does not know how premium rates and payments to the beneficiary are arrived at. Those are matters that only a trained actuary can figure."

See, also, Hayes v. Travelers Ins. Co., 93 F. 2d 568.

For these reasons I conclude that the judgment of the trial court based upon the verdict of the jury should be affirmed. This is the same conclusion reached by the Supreme Court of Utah in a very similar case, Ashton Jenkins Ins. Co. v. Layton Sugar Co., 85 Utah 333, 39 P. 2d 701, wherein it was held that:

"Insurance broker, giving insured receipt in full upon payment of premium less than that designated in policy, could not subsequently recover difference between amount paid and designated amount . . . on theory that statute prohibiting rebate of part of premium was violated."

See, also, Waller-McCumber, Inc., v. Fields (Tex. Civ. App.) 137 S. W. 2d 126.

I, therefore, respectfully dissent.