293 P.2d 949

The TEXAS COMPANY, a Delaware Corporation, Plaintiff-Appellant,

v.

John J. PEACOCK and Mary K. Peacock, Husband and Wife, Defendants-Respondents.

No. 8277.

Supreme Court of Idaho.

Feb. 15, 1956.

410

Brown & Peacock, Kellogg, Keane & Keane, Wallace, Hawley & Marcus, Boise, for respondents.

Ryan & Ryan, Weiser, for appellant.

SMITH, Justice.

June 1, 1938, respondents leased in writing to appellant's predecessor certain real property as a service station site situate in Weiser, Idaho, for a term of 15 years commencing August 1, 1938, at the agreed rental of $55 a month. Appellant is the assignee of its predecessor.

The lease grants unto lessee an option to purchase the leased property for $4,500 if exercised during the 15th year of the lease.

Appellant, July 29, 1953, before expiration of the lease, and before expiration of its 15th year, observed the requirements contained in said option to purchase. It executed and delivered to respondents its notice of election to exercise said option and deposited with an escrow holder the purchase price of $4,500 with instructions

to pay such sum to respondents upon title clearance in exchange for their good and sufficient warranty deed conveying the premises to appellant, all as provided to be performed by the parties upon exercise of the option to purchase.

Respondents refused to execute and deliver their warranty deed. Appellant thereupon, October 27, 1953, brought this action against respondents to require their specific performance. Respondents defended, contending that appellant had voided its option to purchase for the reasons: (1) that upon respondents' execution of a renewal lease, appellant, through its representatives duly authorized, agreed to the renewal lease and accepted the terms thereof; (2) that by reason of a requirement contained in the renewal lease, that respondents remodel the station at their cost, their arranging therefor had caused them to change their financial position to their detriment, which estopped appellant from later exercising the option to purchase. Respondents also cross-complained for damages for appellant's alleged unlawful detainer, and for restitution of the property.

The trial court found that duly authorized representatives of appellant "approved" and "agreed upon" a proposed new lease on appellant's behalf. Appellant assigns the same as error, which presents respondents' first contention for determination.

The record shows that appellant offered, through its manager in Idaho and its zone manager in the Weiser area, and said representatives had authority to offer, to respondents, under a renewal lease, $150 monthly rental for the service station if remodeled at respondents' cost of upwards to $10,000. Respondents refused the offer, requesting $185 monthly rental. The parties then negotiated concerning terms for a day and a half. Thereupon appellant's representatives drafted a proposed lease to be submitted to appellant. The proposal, had it been executed, would have required payment by appellant to respondents of $170 monthly rental; also would have required remodeling of the service station at respondents' cost of $9,945, in accordance with certain plans and specifications and a proposed "Bid & Work Contract" as signed and submitted by a contractor for execution and acceptance in writing by respondents.

February 14, 1953, respondents executed the proposed lease but neither of the aforesaid representatives of appellant either approved or executed the proposal on behalf of appellant, but submitted it to appellant's Butte, Montana, division office. That office, the latter part of March, 1953, suggested that corrections be initialed, but appellant had not at that time approved or executed the instrument. April 24, 1953, appellant's territorial Los Angeles, California, office rejected the proposed lease, stating in effect that it would consider a renewal lease on the basis originally suggested, i. e., $150 monthly rental and with certain remodeling of the service station at respondents' cost.

Appellant promptly advised respondents of such rejection within a week, by May 1, 1953.

The proposed lease sets out in most cogent terms the lack of authority in either of appellant's aforesaid representatives to approve and sign, or execute, and therefore to agree to the proposed lease; for such instrument immediately above lessor signature lines contains the following provision:

"(18)—Approval and Signing by Lessee. This agreement, *whatever the circumstances,* shall not be binding on the lessee unless and until approved and signed in its behalf by an Executive Officer, General Sales Manager, Assistant General Sales Manager, Manager Dealer Sales (Executive Sales Office), Assistant Manager Dealer Sales (Executive Sales Office), Manager Real Estate Division, Territorial Manager (Domestic Sales Department), or Division Manager (Domestic Sales Department)." (Emphasis supplied.)

And below such signature lines, after a space reserved for acknowledgments, appears the following:

"Approved as to: Terms ......
* * *."

Neither of appellant's said representatives nor anyone in appellant's Butte division office or elsewhere on behalf of appellant, signed the proposed lease in due approval and execution thereof or otherwise. If any such representative possessed the requisite authority to approve and to agree upon the lease on appellant's behalf, then he could and should have signed the instrument in due execution thereof, and approved it over his additional signature, instanter on behalf of appellant, and thereupon delivered to respondents a fully executed draft thereof. Obviously said representatives had no such authority and the warning contained in the paragraph. 18 of the instrument could not have misled respondents in believing otherwise. They knew the contents of paragraph 18 by having read and signed the proposal, and said paragraph and the warnings thereof are set out immediately above the signature lines; their knowledge of the contents of said paragraph, and of the lack of authority of said representatives to bind appellant on an executed lease, is additionally shown by the further fact that neither of the representatives executed the proposal on behalf of appellant at the time respondents signed the same, and by respondents' knowledge of the submission of the proposal to appellant by the representatives, in accordance with the mandate of said paragraph.

Further, since neither of appellant's said representatives signed, thereby to duly execute and approve, the proposed lease, in itself shows that neither of them had authority to bind appellant; and lends emphasis to the mandate of the 18th paragraph

of said proposal, that *whatever the circumstances, the agreement shall not be binding on appellant unless and until approved and signed on its behalf by one of its officers referred to in said paragraph.*

The warnings of said paragraph 18, and the fact that appellant's representatives obeyed its mandate and that their obedience thereto was known to respondents, not only shows that said representatives had no actual authority to bind appellant, but that appellant, principal, had not in any wise clothed its representatives, agents, with any apparent authority to enter into the proposed lease on appellant's behalf; nor did said representatives attempt any exercise of apparent authority. Respondents, having actual knowledge of the contents of said paragraph 18 and of such lack of authority of said representatives, could not have been and in fact were not misled.

■ Under the circumstances shown herein, with the limitations of the agency of appellant's representatives known to respondents, the respondents could not acquire rights against appellant contrary to those known limitations. American Surety Co. v. Lind, 132 Wash. 326, 232 P. 280; Chamberlain v. Amalgamated Sugar Co., 42 Idaho 604, 247 P. 12; Federal Deposit Ins. Corporation v. Grim, 184 Okl. 275, 86 P.2d 774; Terminix Co. v. Contractors' State License Board, 84 Cal.App.2d 167, 190 P.2d 24; Ellis v. Nelson, 68 Nev. 410, 233 P.2d 1072, Travelers Indemnity Co. v. Collier, 205 Okl. 247, 237 P.2d 153; Bar-

bour v. Johnson, 201 Or. 375, 269 P.2d 531, 270 P.2d 673; 2 Am.Jur., Agency, § 99, p. 80; 2 C.J.S., Agency, § 92, p. 1188.

Appellant's aforesaid assignment is well taken.

The trial court found that respondents, relying on the representations of appellant's duly authorized agents or representatives, substantially changed their financial position to their detriment. Appellant assigns the same as error, which presents respondents' second contention for determination.

■ Respondents did not arrange for the remodeling of the service station by executing the proposed "Bid & Work Contract" submitted by a contractor, nor otherwise arrange therefor; nor were they at any time or at all under any obligation to remodel the station; nor did they pay out any sum whatever therefor. Furthermore, as set out in the proposal, no obligation on their part to remodel could have accrued until "120 days after the delivery by lessee to lessor of this lease duly approved and signed"; and thereafter, had the proposed lease been so executed and delivered, and had respondents not have remodeled the service station in 120 days, they still would have had further choices as set out in the proposal, i. e., to allow appellant either to terminate the lease upon 30 days notice or to remodel the station and be repaid therefor by application of rental to that account. Under such circumstances respondents were under no obligation whatever to

change their financial position, except as they might voluntarily choose so to do; particularly, they could not have been required to change their financial position, except in the event of the delivery to them of the lease, duly approved and signed.

■ Respondents seek to invoke the rule that where a third party has changed his position and thereby acted to his detriment by reason of reliance upon an agent's exercise of apparent authority, the principal is estopped as against the third party from denying the agent's authority. The rule is well known and should be applied for the protection of third parties who do not know the extent of the agent's real authority.

In this case, however, the proof shows knowledge on respondents' part that appellant's representatives did not have authority to execute and therefore bind appellant under the proposed new lease and that they made no attempt so to do. Moreover, while the authority of appellant's representatives was never actually apparent, at no time did their authority actually appear as apparent to respondents in the light of the mandate of paragraph 18 of the proposed lease of which respondents not only had knowledge, but they also had knowledge of said representatives' obedience thereto. Cannon v. Long, 135 Wash. 52, 236 P. 788.

■ Where an agent has acted within the apparent scope of his authority and the third party dealing with the agent has relied upon the appearance of authority to such party's detriment, then in theory the principal becomes estopped to deny the agent's apparent authority to do the particular act or acts in controversy. Hammitt v. Virginia Mining Co., 32 Idaho 245, 181 P. 336; Madill v. Spokane Cattle Loan Co., 39 Idaho 754, 230 P. 45; Stout v. McNary, 75 Idaho 99, 267 P.2d 625.

■ On the other hand apparent authority does not arise where the lack of the agent's authority is known, or should be known to the party dealing with the agent. Barbour v. Johnson, 201 Or. 375, 269 P.2d 531, 270 P.2d 673.

Appellant's last aforesaid assignment is well taken.

This case presents a further cogent reason why respondents cannot be permitted the relief which they seek.

The record shows that some few days after appellant apprised respondents of appellant's rejection of the proposed new lease, respondents repudiated their *offer* evidenced by the proposal and anything said offer had to do with.

The testimony of respondent Mr. Peacock in that regard on cross-examination, is as follows:

"Q. Now, on or around May 7 [1953] you wrote a letter to Mr. Caldwell [an agent of appellant] stating that you were withdrawing from the February 14 [1953] offer, and your signatures thereon were of no further

force and effect, or word to that effect, didn't you? A. I believe I did.

"Q. In other words, *you completely repudiated anything that this offer of February 14 had to do with, is that right?* A. Yes." (Emphasis supplied.)

Respondents thereby did not seek to rely upon any alleged new lease as having resulted by reason of appellant's representatives, on behalf of appellant, having "approved" and "agreed upon" and thereby having entered into such a lease with respondents. Rather, such testimony shows that the contemplated transactions had progressed only to the status of an offer on respondents' part to re-lease the premises as in the proposal set out, with appellant's attendant right to reject the offer; also that respondents could, and they did, repudiate their standing offer, as such, and all matters having to do therewith. Respondents recognized, by appellant's nonacceptance of their offer, followed by their own repudiation, that the transaction had not yet merged into the status of a contract not capable of being so repudiated. Respondents not only thereby admitted no disturbance in the status of the existing lease but they, as did appellant, continued to observe the mutual rights and obligations thereof during the balance of its term. The record at best reflects the efforts of the parties to compromise their differences, thereby to arrive at a basis to submit to appellant for its consideration, as suggested by respondents' offer.

When appellant exercised its option to purchase, and there is no dispute as to appellant's observance of the acts and duties required thereby, a contract resulted supported by the valuable consideration paid. Appellant is entitled to respondents' specific performance of the contract. 49 Am.Jur., Specific Performance, sec. 117, p. 137; 81 C.J.S., Specific Performance, § 47, pp. 525–527.

We deem it unnecessary to consider appellant's further specifications of error.

The judgment of the trial court is reversed and the cause remanded with directions to set aside the judgment and thereupon to enter judgment in favor of appellant requiring respondents to specifically perform their contract to convey the real property, resulting upon appellant's exercise of its option to purchase. Costs to appellant.

TAYLOR, C. J., KEETON and PORTER, JJ., and BECKWITH, District Judge, concur.