(December 6, 1924.)

## A. L. BEVERCOMBE, Respondent, v. DENNEY & COMPANY, a Corporation, Appellant.

[231 Pac. 427.]

CONTRACTS FOR THE SALE OF GOODS—STATUTE OF FRAUDS—PLEADING—PRINCIPAL AND AGENT.

1. An order of the trial court denying a motion for nonsuit will not be reviewed on appeal where subsequent to the order evidence is offered and admitted on behalf of the party making the motion.

2. The party relying upon the statute of frauds as a defense must allege it where it does not appear from the complaint that the contract sued upon falls within the statute.

3. A principal is bound by the acts of his agent within the scope of his apparent authority.

4. The contract of an agent in excess of his authority may be ratified by the principal.

5. A principal, who ratifies a contract of his agent made in excess of authority, is as fully bound as if the contract had been made with full authority.

Publishers' Note.
5. Effect of ratification by principal of act of agent, see note in 5 Am. St. 109.

6. The failure of an agent to follow his principal's instructions will not defeat the rights of a third person who dealt with the agent in good faith and in ignorance of the principal's instructions.

7. The authority of an agent to contract for his principal is a question for determination by the jury where there is a conflict of evidence as to the agent's authority.

8. Whether a principal ratified a contract made by his agent in excess of authority is, where there is a conflict in the evidence, a question for the jury.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Action for damages. Judgment for plaintiff. *Affirmed.*

J. H. Helman, for Appellant.

Where an agent's authority is conferred by an instrument in writing, the principal will not be bound by the acts of his agent in excess of such authority, unless by subsequent ratification of such excesses, or a previous holding out to the public of such agent as having authority beyond the terms of such written instrument. (10 Ency. Ev. 13, 15, 27; *Frink v. Roe,* 70 Cal. 296, 11 Pac. 820; *Grigham v. Peters,* 1 Gray (Mass.), 139; *Claflin v. Continental Jersey Wks.,* 85 Ga. 27, 11 S. E. 721; *McGregor v. Hudson* (Tex. Civ.), 30 S. W. 489; *Salomon v. McRae,* 9 Colo. App. 23, 47 Pac. 409; *Empire State etc. Co. v. Faulkner,* 55 Fed. 819; *Keane v. Pittsburgh Min. Co.,* 17 Ida. 179, 105 Pac. 60; *Rosnagle v. Armstrong,* 17 Ida. 246, 105 Pac. 216; *Findlay v. Hildenbrand,* 17 Ida. 403, 105 Pac. 790, 29 L. R. A., N. S., 409; C. S., secs. 5886–5888.)

"Where the agent's authority is conferred by a writing, parol evidence is not admissible to enlarge the written authority." (10 Ency. Ev. 13; *Frink v. Roe, supra; Wicktorwitz v. Farmers Ins. Co.,* 31 Or. 569, 51 Pac. 75.)

A principal cannot ratify an act of an agent without full knowledge of the facts. (*Findlay v. Hildenbrand, supra.*)

Porter & Witham, for Respondent.

Where an agent's authority is originally conferred by a contract in writing, the terms thereof may be waived or modified by the principal by subsequent oral or written instructions or acts inconsistent therewith. (31 Cyc. 1336; *Dayton v. Nell*, 43 Minn. 246, 45 N. W. 231; *Duncan v. Hartman*, 143 Pa. St. 595, 24 Am. St. 570, 22 Atl. 1099; 6 R. C. L. 914.)

Contracts made within the scope of the apparent authority of the agent are binding on the principal. (31 Cyc. 1331; 21 R. C. L. 852.)

C. S., sec. 7976, is superseded and repealed, in so far as it is inconsistent with C. S., sec. 5676. (Sess. Laws 1919, chap. 149, p. 472, sec. 79; *Eigen v. Rosolin* (N. Y.), 89 Atl. 923.)

Where the complaint alleges the contract generally without stating whether it was in writing or not, a statute of frauds such as C. S., sec. 5746, is not available as a defense unless specially pleaded. (*Abraham v. Durward*, 46 N. D. 611, 180 N. W. 783; *Pearlberg v. Levisohn*, 112 Misc. Rep. 95, 182 N. Y. Supp. 615; *Spiegel v. Lowenstein*, 162 App. Div. 443, 147 N. Y. Supp. 655.)

WM. E. LEE, J.—This is an action for damages. In the fall of 1920, appellant, whose principal place of business in this state was Payette, through one J. C. Evans, its agent, contracted with respondent, a grower of potatoes, for the purchase of 1,050 bags of No. 1 potatoes for $1.15 per hundred F. O. B., and for the purchase of an additional 1,050 bags of No. 1 potatoes for 80¢ per hundred F. O. B. The date of the first contract was November 15th and the date of the second contract was December 3d. The potatoes were then stored in a potato cellar at Filer. Evans examined the potatoes before entering into the contracts. Upon consummation of each of the contracts, respondent demanded of Evans that he make a payment to bind the bargain. As a payment or deposit on the first contract Evans drew a draft

or check on appellant for $50, signed "Denney & Co. by J. C. Evans." On the margin, Evans made the following notation: "Deposit on 1050 Bags of No. 1 spuds on cars a 115 per 100#." The draft or check was on a printed form and, in addition to other matter ordinarily printed on such an instrument, there appeared at the top the following: "To Denny & Co. Payette, Idaho. No. 201." At the place ordinarily reserved for the signature of the maker or drawer there was printed the words "Denney & Co. By ————." It was on the blank line that the agent Evans signed his name. As a part payment on the second contract, Evans drew draft or check No. 202, for $150, in favor of respondent. On the margin thereof he wrote the following: "For Deposit on 1050 Bags No. 1 spuds on cars . . . Totaling 2100 Bags. 1050 a $1.15—1050 a 80¢." This instrument was on the same printed form. On December 4th, Evans gave to respondent check or draft No. 203, for $250. It was on the same form and signed in the same manner as the others. On the margin of this instrument Evans made the following notation: "Payment on Car No. P. F. E. 15055 $50 Deducted from Deposit and applied to this payment." The name of respondent appeared on the back of each instrument. They were deposited, and payment of each and all of them was refused. One carload of potatoes (P. F. E. 15055) was delivered and accepted by the agent, was billed to appellant, the bill of lading was delivered to appellant and the car of potatoes was shipped and sold by it. Appellant alleged that this car was consigned to it and that there was realized for respondent from a sale thereof the net sum of $245.52, which it tendered to respondent but which respondent refused to accept. There is no evidence whatever which tends to show that there was any consignment of this car. Thereafter respondent delivered to and appellant accepted about 20,000 pounds of potatoes for which it paid $145 and admitted that it owed $15. It is worthy of note that the $15 was not paid by appellant to respondent at the time of the delivery of the 20,000 pounds of potatoes because of the fact that too large

a deposit had been made on one of the original contracts. There was a marked decrease in the market price of potatoes. Appellant refused to accept the delivery of the remainder of the potatoes, and respondent commenced this action to recover damages for the breach of the contract occasioned by the refusal of appellant to accept delivery of the remainder of the potatoes and to pay the contract price therefor. From judgment in favor of respondent, defendant appealed, and has assigned a number of errors. These assignments relate principally to the authority of the agent, the statute of frauds and the refusal to grant a nonsuit.

There is no merit in appellant's contention that the court erred in refusing to grant his motion for nonsuit; for upon the court's overruling the motion for nonsuit appellant introduced evidence in his own behalf. An order of the trial court denying a motion for nonsuit will not be reviewed on appeal where subsequent to the order, evidence is offered by and admitted on behalf of the party who made the motion. (*Shields v. Johnson,* 12 Ida. 329, 85 Pac. 972; *Rippetoe v. Feely,* 20 Ida. 619, 119 Pac. 465; *Smith v. Potlatch Lumber Co.,* 22 Ida. 782, 128 Pac. 546; *Palcher v. Oregon Short Line R. R. Co.,* 31 Ida. 93, 169 Pac. 298; *Stewart v. Stewart,* 32 Ida. 180, 180 Pac. 165; *Groefsema v. Mountain Home Co-op. Irr. Co.,* 33 Ida. 86, 190 Pac. 356.)

Appellant contends that the two contracts are unenforceable for the reason that they fall within the inhibitions of the statute of frauds. This position is met by respondent with two contentions. One is that the contracts do not fall within the provisions of the statute of frauds. The other is that there is no allegation in the answer that the contracts are within the statute of frauds; and that, since this question was not raised by the answer, it is not here for review. The answer consisted of a specific denial of the allegations of the complaint, and there is no suggestion in the complaint or answer that the contracts for the sale of the potatoes are within the statute of frauds. Whether the checks or drafts, together with the notations thereon and the actions of the parties, was sufficient to take these contracts out of

the statute need not be determined. We are of the opinion that the second contention of respondent is sufficient to dispose of the assignment. In 1919 there was enacted in this state what is known as the Uniform Sales Law. The purpose of this enactment, as expressed in sec. 74 thereof, was " . . . . to make uniform the laws of those states which enact it." Section 4 of that act (C. S., sec. 5676), provides that:

"A contract to sell or the sale of any goods or choses in action of the value of five hundred dollars or upwards *shall not be enforceable* by action unless . . . . "

C. S., sec. 7976, subdivision 4, provides that such a contract *shall be invalid;* and this has been the law since 1881. Subdivision 4 of C. S., sec. 7976, has not been expressly repealed, but in the enactment of the Uniform Sales Law the legislature attempted to so amend this section as to make it harmonize with the Uniform Sales Law, and in sec. 79a, of the 1919 Sess. Laws, the legislature specifically attempted to make this section conform to sec. 4 (C. S., sec. 5676) of the Uniform Sales Law, and in so doing changed the valuation clause from two hundred dollars to five hundred dollars, but without doubt overlooked making the words *"shall be invalid"* read *"shall not be enforceable."* We are of the opinion that in view of the expressed intent of the legislature to amend subdivision 4, of C. S., sec. 7976, "to conform with section 4 hereof" (sec. 4, of the Uniform Sales Law; C. S., sec. 5676), it must be held that a contract falling within the provisions of the statute of frauds is not void but is voidable. The complaint alleged the contract generally. Such a complaint is sufficient. It is not necessary to allege that a contract is or is not within the statute of frauds. (*Alaska Salmon Co. v. Standard Box Co.*, 158 Cal. 567, 112 Pac. 454; 25 R. C. L. 739, sec. 390.) It is the general rule, we believe, that where it does not appear from the complaint that the contract sued on falls within the statute of frauds, the party relying on the statute as a defense must allege it in his answer. In other words, the statute of frauds is a defense which may or may not be used, but is not avail-

able as a defense unless pleaded. (*Abraham v. Durward*, 46 N. D. 611, 180 N. W. 783; *Broder v. Conklin et al.*, 77 Cal. 330, 19 Pac. 513; *Pearlberg v. Levisohn*, 112 Misc. 95, 182 N. Y. Supp. 615; Uniform Laws Ann. (Sales Act), vol. 2, pp. 22, 23; 9 Ency. Pl. & Pr., sec. 2, pp. 705–707; *Osborne v. Endicott*, 6 Cal. 149, 65 Am. Dec. 498; 25 R. C. L., secs. 394, 395, p. 742; *McClure v. Otrich*, 118 Ill. 320, 8 N. E. 784; *Hurt v. Ford* (Mo.), 36 S. W. 671; *Hamer v. Sidway*, 124 N. Y. 538, 27 N. E. 256, 12 L. R. A. 463; *Guynn et al. v. McCauley et al.*, 32 Ark. 97; *McDougald v. Banks*, 13 Ga. 451; *Middlesex Co. v. Osgood*, 4 Gray (Mass.), 447.)

Probably the principal contention made by appellant is that Evans had no authority to enter into the contracts for the purchase of the potatoes and that appellant is not bound. In addition to the facts hereinbefore set forth, it appears that appellant, by an instrument in writing, made Evans its agent to purchase potatoes for it and agreed to pay him a fixed sum for each sack of potatoes purchased. Appellant supplied Evans with its printed checks or drafts to be used in paying for the potatoes purchased by him. It would seem, therefore, that the execution of contracts for the purchase of potatoes was within the scope of the agent's apparent authority. And it is fundamental that a principal is bound by the acts of his agent within the scope of the agent's apparent authority. (21 R. C. L. 854, secs. 34 and 81 and cases cited.) Appellant, however, takes the position that since Evans agreed, in the agency contract, that he would not make any purchases except on written instructions from it, it cannot be held on these contracts because it did not give Evans written instructions to make them. The evidence of appellant was to the effect that no instructions had ever been given to Evans from its head office, in Payette, to make these purchases. The agency contract itself did not limit instructions from Payette. Although it was provided in the agency contract between appellant and Evans that no purchases would be made by Evans for appellant except on written instructions, such provision could be waived by appellant; and if oral authority was given Evans to make these

purchases appellant cannot escape liability. Conceding for the purpose of argument that the agent acted in excess of his authority the law is well settled that the contract of an agent, made in excess of authority, may be ratified by the principal; and, when so ratified, the principal is bound as fully as if the contract had been originally made with his full authority. (21 R. C. L. 919, sec. 99.) With this principle in view it is interesting to note some additional evidence. A few days subsequent to the purchases (December 9, 1920), appellant wrote Evans and explained that the drafts drawn by him in favor of respondent were returned unpaid "for the reason that they (the accounting department) have not been advised of any authority being given you to sign drafts." It is nowhere stated in this letter that Evans did not have authority to "sign drafts." He was advised, however, by this letter, which was written after the drafts had been dishonored, to "get in touch with Mr. Hurst at Burley, who has charge of that territory, and have him issue draft to cover these amounts." It is apparent from the last quotation that, with full knowledge that Evans had entered into the contracts to purchase these potatoes at a certain price, appellant did not indicate that it did not then consider itself bound by the contracts. The fact that it authorized Evans to have Hurst issue a draft to cover the amount of the drafts was evidence of a ratification by it of the contracts. The letter also advised Evans that all business done for it "under present arrangements should be done through Mr. Hurst at Burley," thus acknowledging that Hurst represented it and that Evans should do business for appellant through him; Evans having testified that the contracts with respondent were made in pursuance of express instructions from Hurst. The bill of lading, covering the first car of potatoes shipped (P. F. E. 15055), was sent to appellant at Payette. Knowing that a shipment of potatoes under this contract had been made, appellant did not say to its agent that he had no authority to make the contracts, or refuse to accept the shipment, but on the contrary stated that the bill of lading "should have been sent

to Mr. Hurst.'' In a letter from Denney & Co. to Evans and signed by Hurst, although doubtless dictated by someone else in authority, Mr. Evans is told not to buy *"any more potatoes* until notified to do so either by Mr. Hurst or myself and do not make more than $10 advance on any purchase.'' Certain shipping instructions were given in that letter and it was further stated that ''the three cars you have purchased, No. 1 White potatoes, are to cost us $.85 cents per cwt., including your brokerage,'' thus showing that appellant had full knowledge of the contracts and indicating an intention to abide by them. The P. S. to that letter was as follows: ''As you have advanced $150 on these three cars, as you make settlement on each car when loaded, deduct the $50 advance made on each one. This is absolutely necessary in order that the records in Payette can be kept straight.'' The evidence showed that the potatoes referred to in this letter were the potatoes purchased from respondent. The letter shows not only an absence of any intention not to abide by the contracts made by Evans, but, on the contrary, it is a distinct recognition of the contracts. Finally, in a letter to the attorneys for respondent, dated February 2, 1921, appellant declines to accept the potatoes because ''Mr. Evans did not follow instructions regarding these potatoes, so we do not figure that he was purchasing them for our account.'' Appellant does not indicate in this letter that Evans was not their agent or that he did not have the authority to make the purchases. The refusal to perform the contracts is based solely upon Evans' failure to follow instructions. The failure of Evans to follow appellant's instructions cannot possibly affect the rights of respondent, who dealt with the agent in good faith and in ignorance of the principal's instructions.

The authority of Evans to enter into these contracts with respondent and thereby bind appellant, in view of the conflict in the evidence, was a question of fact for the jury, and it likewise was within the province of the jury to determine, in the event Evans did not have authority to bind appellant, whether there was a ratification of the contracts by

appellant. From all the evidence in the case, we are convinced that there was not only sufficient evidence to sustain the verdict of the jury but that the jury was amply justified in finding for the respondent. It is apparent from the record that Evans had authority to enter into the contracts; the contracts were recognized by appellant; a part of the goods was accepted and it was only when the price of potatoes declined and appellant realized that the contracts would not prove profitable that it refused to abide by the contracts and accept and pay for the potatoes.

Appellant insists that the evidence does not show that respondent had No. 1 potatoes to deliver. In our opinion this contention is not sustained. The potatoes belonging to respondent had been hauled to Filer and stored. They were examined by Evans before the purchases were made. Evans testified that they were No. 1. It seemed to be respondent's view that they were No. 1, although he had never had them graded. The 20,000 pounds delivered to appellant were graded No. 1 by an Idaho inspector. And, while the full car that was accepted and shipped was not given a No. 1 Idaho grade by a Colorado inspector, we cannot presume, as the jury could not do, that an Idaho inspector would not have given a No. 1 grade to the potatoes. In view of the fact that under the agency contract the certificate of inspection was to be furnished to and paid for by the appellant, and in view of the further fact that appellant did not give respondent an opportunity to deliver the potatoes, we are of the opinion that the jury was justified in concluding that respondent could have delivered to appellant No. 1 potatoes to fill the contracts.

Other alleged errors have been considered. We are of the opinion that the jury was not misled by any of the instructions complained of. The instruction offered by appellant was properly refused.

Judgment affirmed. Costs to respondent.

McCarthy, C. J., and William A. Lee, J., concur.