## HASSING v. MUTUAL LIFE INS. CO. OF NEW YORK.

No. 6780. Decided May 23, 1945. (159 P. 2d 117.)

See 5 C. J. S., Appeal and Error, sec. 1753; 29 Am. Jur., 1082.

*Farnsworth & Van Cott,* of Salt Lake City, and *Morris Blaine Peterson,* of Ogden, for appellant.

*David J. Wilson* and *Howell, Stine & Olmstead,* all of Ogden, for respondent.

WADE, Justice.

The Mutual Life Insurance Co. of New York, a corporation, the defendant and appellant herein, had issued three life insurance policies on the life of Clifford E. Hassing, wherein Chloie P. Hassing, the plaintiff and respondent herein, was named as beneficiary in each. Hereafter in this opinion these parties shall be called plaintiff and defendant, respectively.

Clifford E. Hassing died as the result of being run over by a train and plaintiff filed three suits on the three insurance policies issued by the defendant to recover under the double indemnity provisions of these policies. One of these cases was tried and a verdict and judgment was entered in favor of plaintiff from which defendant appeals.

The evidence discloses that on November 20, 1941, an acquaintance encountered Clifford E. Hassing walking west on the north side of 24th Street in Ogden, Utah, and the two walked together to the intersection of 24th Street and Lincoln Avenue. Hassing appeared to be in a pleasant mood. When they arrived at this corner a Bamberger train going south was pulling out of the station thus blocking them from continuing west across the street. Hassing's companion being in a hurry decided to cross to the south side of the street and then turn west before the train could block him on that side. When he arrived on the south side he turned back to look and see how far the train had progressed, in doing so he saw Mr. Hassing walking out to the center of the street directly to the side of the train. As he looked Mr. Hassing appeared to go down to his knees and his head went under the wheel of the train. When he went down his hands were in his coat pockets. Mr. Hassing died as a result of this accident.

Another witness to this occurrence was in a service station on the northeast side of 24th Street and Lincoln Avenue. He testified he saw a man (Hassing) on the curb and as he watched, this man walked out to the train, stopped, stooped over and appeared to be looking under the train, when he went headlong into the wheels of the train.

The double indemnity clause in the policy under which plaintiff obtained her judgment provided that the double indemnity would be payable upon receipt of due proof that the insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes,

"provided, however, that the Double Indemnity shall not be payable in the event of the Insured's death * * * at any time by his own act, whether sane or insane, * * * or directly or indirectly from bodily or mental infirmity or disease of any sort."

For a great number of years prior to his death the insured had been suffering from a chronic infection of his inner

ear. In 1936 and 1937 the labyrinth of the ear which is the organ which regulates the equilibrium of a person had become inflamed and this had caused him to feel dizzy and suffer from vertigo. In March of 1941 he had suffered a heart attack and was not able to work from that time on.

During the course of the trial the defendant offered to prove by the testimony of a Dr. Hetzel, who had been insured's physician for a number of years, that the insured had been suffering from an ailment of the inner ear and had continued to so suffer up to the day of his death. The court upon objection from plaintiff refused to allow the doctor to testify to any information he received as to the deceased's physical condition because the relationship of physician and patient made such information privileged communications, unless the information was obtained for the purposes of the policy.

Defendant assigns this refusal to admit the testimony of Dr. Hetzel as error. It contends that although under Sec. 104-49-3, U. C. A. 1943, subsection 4, which provides:

"A physician or surgeon cannot, without the consent of his patient, be examined, in a civil action, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

Yet in this case the insured had waived this privilege because in his application for the policy he expressly consented to waive the privilege which our statute grants him. The provision in his application reads as follows:

"I expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions or law forbidding any physician or other person who has attended or examined me, or who may hereafter attend or examine me, from disclosing any knowledge or information which he thereby acquired * * *."

Plaintiff in her brief concedes that the privileged communications between physician and patient may be waived

by the patient, but contends that the court did not err in refusing to admit defendant's proffered testimony of Dr. Hetzel because neither by its pleadings nor by its offer of proof was its relevancy disclosed to the court. Defendant had not pleaded as a defense to the action that the disease from which deceased was suffering was the direct cause of the accident which resulted in his death and the proffer of proof of this disease also did not enlighten the court as to its relevancy in connection with the accident which caused the death. We have examined the record carefully and find that the proffered testimony was excluded by the court because the proffer did not limit it to information obtained by the physician in connection with the policy, apparently limiting any testimony of the physician to any information obtained pertaining to the obtaining of the policy. It is our opinion that the court erred in refusing to receive the proffered evidence. The waiver given by the deceased was very broad in its terms and did not limit its consent to have disclosed only those ailments which a physician discovered or which had been disclosed to him for the purpose of obtaining the policy. In *New York Life Insurance Co.* v. *Snyder*, 116 Ohio St. 693, 158 N. E. 176, 179, 54 A. L. R. 406, the court construed a similar waiver by an insured and in holding that the lower court erred in refusing to admit the testimony of physicians on the ground that it was privileged communications, said:

"* * * Surely the insurance company has a clear right to say to an applicant for insurance, 'We will not issue a policy of insurance to you unless you give to the company full and complete authority to acquire any information which any physician may now possess or may hereafter possess concerning the state of your health at the time of taking out the policy.' * * *"

See also the annotation in 54 A. L. R. commencing on page 412. However, due to the fact the record discloses

that defendant was allowed to and did introduce by the testimony of another physician the facts pertaining to the disease from which deceased suffered and which disease was the same which it proffered to prove by the testimony of Dr. Hetzel, and that this evidence was not contradicted, it is our opinion that this error was not prejudicial to defendant and under the circumstances it is not reversible error.

Defendant also assigns as error the court's refusal to admit in evidence a report by Dr. Hetzel purportedly made in support of an application by the insured for disability benefits under the policy. It is defendant's contention that the court erred in refusing to admit the physician's report because it was in effect an admission by the insured as to the disabilities contained therein as it was made at the insured's request in support of his application for disability benefits under the policy and was therefore admissible for that reason. The insured's application for disability benefits under the policy and which application was admitted in evidence by the court, shows that it was signed on June 9, 1941, by the insured and claimed the disability to be due to heart trouble, and the attending physician named in this application was a Dr. Seidner. The report which was excluded by the court and which defendant contends was made in support of this application is dated October 30, 1941, does not have the insured's signature thereon, is signed by Dr. Hetzel and does not give a history of heart trouble. Dr. Hetzel did not testify that this report was made at the request of Mr. Hassing, the insured, or that the insured had seen the report and knew what it contained, or that it accompanied the application or was sent by him in support thereof. He testified that somebody had requested him to make the report or he would not have made it. Under the circumstances this court will not assume that the insured made the request. Therefore the report cannot be treated as an admission by insured.

Defendant also assigns as error the refusal of the court to consolidate the three causes of action which plaintiff had filed against it. Each cause of action was based on a separate policy in which plaintiff was the beneficiary and Clifford E. Hassing was the insured. The cause of action in each was based on a double indemnity provision of the policy sued on. Before the trial of the instant case defendant had moved that all these causes of action be consolidated as provided for in Sec. 104-54-12, U. C. A. 1943, which reads:

"Whenever two or more actions are pending at one time between the same parties and in the same court upon causes of action which might have been joined, the court may order the actions to be consolidated."

Plaintiff objected to the consolidation of the cases because to do so might render the consolidated case removable to the Federal Court. However, she offered for the purpose of trial that the cases might be consolidated and evidence in the instant case be used as evidence for all three cases and a single jury bring in verdicts in all three cases. Defendant did not accept this offer and the court thereupon denied its motion for a consolidation of the three cases.

It is defendant's contention that the court abused its discretion in refusing to grant its motion for consolidation. Defendant argues that while whether cases which come within the provision of Sec. 104-54-12, U. C. A. 1943, will be consolidated lies within the sound discretion of the trial court, yet this discretion cannot be exercised arbitrarily and

"unless the plaintiff can establish that his rights would be prejudiced by a consolidation, it is an abuse of discretion to refuse to consolidate cases involving causes of action that could properly be joined in a single complaint."

One of the cases cited by defendant in support of this contention is *Barrett* v. *Broad River Power Co.*, 146 S. C. 85, 143 S. E. 650, 654, wherein the court held that it was an abuse of discretion for the lower court to refuse to

consolidate the cases where the causes of action pleaded arose out of the same transaction, the parties were the same and it was not shown that the plaintiff would be prejudiced thereby. However, in connection with this ruling the court said:

"* * * While a plaintiff has the right, in the first instance, to elect if he will unite his several causes of action in one suit, the court * * * may require him to *try* all of them together, if he refuses to unite. * * *" (Italics ours.)

"Where actions may be properly consolidated without injury to any of the parties, that course should be taken to prevent multiplicity of suits, to save costs to the parties themselves, to conserve the time of the court, to clear congested dockets, and to help the taxpayers, who bear the expenses of maintaining courts.

It will be noted that the reasons for the court ruling that the lower court had abused its discretion in refusing a consolidation of the cases are not present in the instant case. In the case before us the plaintiff had offered to have the cases consolidated for *purposes of trial* ■ and thus avoid any unnecessary costs and expenditure of time to the parties and the court. Under the circumstances the court did not abuse its discretion in refusing to consolidate the cases upon the refusal of the defendant to accept plaintiff's offer. See also *St. George* v. *Boucher,* 84 Mont. 158, 274 P. 489, on page 491, wherein the court said in construing a statute identical in wording with ours:

"* * * But if the actions were such as could have been consolidated, it was within the discretion of the court to make, or to refuse to make, the order. Unless otherwise provided by statute, the consolidation of actions, even where permissible, cannot be demanded as a matter of right; the matter rests within the discretion of the court, which will not be interfered with, unless clearly abused, *particularly where the consolidation is denied.* * * * The statute is permissive, not mandatory. The purpose of the statute is to authorize the court to consolidate actions, which may be united, when the interests of justice make it proper that a consolidation should be had: *Realty Construction & Mtg. Co.* v. *Superior Court,* 165 Cal. 543, 132 P. 1048. Whenever the court is of the opinion that it may expedite its business and further the interests of the litigants, at the same

time minimizing the expense upon the public and upon the litigants alike, the order of consolidation should be made, but manifestly the conditions then before the court will determine the exercise of the court's discretion." (Italics ours.)

Defendant further assigns as error the court's denial of its motion for a directed verdict. It argues that since it is settled that if the injury which causes death is indirectly caused by bodily or mental infirmity, the beneficiary cannot recover under the double indemnity provision of the policy, and since there was uncontradicted evidence that the deceased was suffering from a chronic ear ailment which had affected the labyrinth of the ear which is the organ containing the fluid which maintains the equilibrium of the body, and since there was no evidence that anything caused the insured to fall, the court should have directed a verdict in its favor.

As we have shown there was evidence that the deceased had walked directly to the side of the train and when he was within about two or two and one-half feet from it he appeared to stop, stoop and fall, as a result of which the train passed over him, killing him instantly. There was also evidence that there were dug out or irregular places in the highway running along the track. There is no dispute that the immediate and sole cause of Hassing's death was due to his fall under the train. Under these facts, having proved that the direct cause of death was due to the accident, plaintiff had made out a prima facie case. See *Griffin* v. *Prudential Ins. Co.,* 102 Utah 563, 133 P. 2d 333, 144 A. L. R. 1402; *Browning* v. *Equitable Life Assurance Co.,* 94 Utah 570, 80 P. 2d 348. The burden of proving that the fall which caused the death was the result of a disease from which deceased was suffering then shifted to the defendant. The defendant, as we have shown, proved that Hassing suffered from a chronic ear ailment the nature of which could cause him to lose his equilibrium. However, there was no direct proof that at the time of the accident his ear condition was such that it

caused him to lose his equilibrium and fall within the path of the train, nor did defendant's offer of proof which was rejected by the court offer to prove that at the time of the accident Hassing's physical condition was such that he would lose his equilibrium. In fact, the direct evidence as to his apparent physical condition at the time was to the contrary. He was seen walking along the streets of Ogden in a perfectly normal manner and appeared to an acquaintance to be in good spirits. Under this state of facts the court did not err in refusing to grant defendant's motion for a directed verdict.

Affirmed. Costs to respondent.

LARSON, C. J., and McDONOUGH, TURNER, and WOLFE, JJ., concur.