**STIRK et al. v. MUTUAL LIFE INS. CO. OF NEW YORK.**

No. 4470.

United States Court of Appeals Tenth Circuit.

Oct. 22, 1952.

Derrah B. Van Dyke and Lewis J. Wallace, Ogden, Utah, for appellant.

Dennis McCarthy, Salt Lake City, Utah (W. Q. Van Cott, Clifford L. Ashton, Salt Lake City, Utah, and Haughton Bell, New York City, on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal by the beneficiary of five insurance policies from a judgment in favor of the defendant insurance company in an action on the double indemnity feature of each of said policies.

'' The face of each of the policies provided for double indemnity "upon receipt of due proof that such death resulted from bodily injury effected solely through external, violent, and accidental means, all upon the conditions set forth in Section 1, * * *". Section 1 entitled "Double Indemnity" on the second page of the policies further provided that double indemnity would be payable upon "receipt of due proof that the Insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, * * * there is evidence of a visible contusion or wound on the exterior of the body, * * *."

The insured was lost while hunting in the mountains on or about October 18, 1943 and was never found. There was evidence that the insured was 51 years of age on the date of his disappearance, with a husky, sturdy physique. He had frequently hunted deer in the Guildersleeve Canyon area in Utah where he disappeared. On this particular occasion he arrived at the hunting camp about three days late because a stiff neck had confined him to bed. He arrived at the hunting camp about 4:30 in the afternoon, had a heavy meal, and started hunting with his companions. In ascending into the hills his companions noted that he was having difficulty breathing, that he was pale and lagged behind. The last time his companions saw him he was higher up on the ridge of the canyon and climbing higher. It began to rain, then to sleet and snow. Thinking that he had gone back to camp when he did not answer their call, his companions trotted back to camp and found that he was not there. It was soon dark and cold and snowing heavily in the mountains. The country where he was last seen was extremely vast, wild and rugged with sink holes, boulders, cliffs and canyons. There was a heavy undergrowth consisting of patches of chaparral beds, alpine fir, and spruce into which a man could easily lose himself if he sought shelter, and if he were unable to emerge, he could die there without being found for years.

The trial court instructed the jury that in order for the beneficiary to recover under the double indemnity provisions of the policies it was not necessary for the body to be found but that it was incumbent upon the beneficiary to prove by a fair preponderance of the evidence that death of the insured occurred on or about October 18, 1943 as a direct result of bodily injuries effected solely through external, violent and accidental means, independently and exclusively of all other causes and of which there was evidence of a visible contusion or wound on the exterior of the body, and not directly or indirectly from disease or bodily or mental infirmity.

More specifically, the jury was instructed that if they believed from a fair preponderance of the evidence that insured's death resulted directly or indirectly from being shot by a stray bullet, by falling over a cliff, or into a sink hole, crevasse or cavern, or if by falling over some obstruction such as a log, tree or the like he so injured himself as to be unable to travel, as a result of which he froze to death or died of exposure in a blizzard or heavy storm, and that if his body had been found the death or accident would have been evidenced by a visible contusion or wound on the exterior of the body, their verdict should be for the plaintiff; and conversely, the jury was instructed that if they found that the insured's death was not the kind that would have left a visible contusion or wound on the body, if it had been found, or that death was caused or contributed to, directly or indirectly, by bodily disease or mental infirmity, they should find for the defendant.

The effect of these instructions was to tell the jury that the burden was upon the plaintiff to prove by a preponderance of the evidence not only that death was accidental but that such accidental death was evidenced by a visible contusion or wound on the exterior of the body and was not indirectly or directly the result of bodily disease or mental infirmity.

The beneficiary excepted to the court's instructions on the theory that the provisions in the policies with reference to evidence of visible wounds or contusions on the exterior of the body were conditions, limitations or exceptions to the coverage provided in the face of the policies, as to which the insurer, not the beneficiary had the burden of proof. Consistently with her position in the trial of the case, the beneficiary contends on appeal that to prove a prima facie case and to be entitled to recover, she must show only circumstances from which the jury could infer that death resulted from bodily injuries effected solely through external, violent and accidental means, and that having made this proof the burden is then upon the insurer to prove the absence of any wound or contusion on the exterior of the body.

The policies being Utah contracts are governed by the laws of that state, and appellant relies upon the Utah cases which impose upon the insurer the burden of prov-

ing conditions, exceptions or exclusions from the coverage of the policy, as where the policy provides that the double indemnity provisions " 'shall not cover accident, * * * caused directly or indirectly, wholly or partly, by bodily or mental infirmity, hernia, ptomaines, bacterial infections * * * or by any other kind of disease.' " See Browning v. Equitable Life Assur. Soc. of United States, 94 Utah 570, 80 P.2d 348, 351. Or where the policy spe-, cifically provides " 'that no Accidental Death Benefit shall be payable if the death of the insured resulted * * * directly or indirectly from bodily or mental infirmity or disease in any form.' " See Griffin v. Prudential Ins. Co., 102 Utah 563, 133 P.2d 333, 337, 144 A.L.R. 1402 and Hassing v. Mutual Life Ins. Co. of New York, 108 Utah 198, 159 P.2d 117. See also New York Life Ins. Co. v. Wilson, 9 Cir., 178 F.2d 534.

These cases rest squarely on the hypothesis that by its terms the policy covers death solely and exclusively by accidental means, and having offered proof of that fact alone, or facts from which it can be inferred, a prima facie case is established, and that any provisions which qualify or condition the accidental death are exceptions from the coverage, and under the established rules of construction the burden is upon the one who asserts and relies upon them to escape coverage under the contract. Thus, in Hill v. Great Northern Life Ins. Co., 1936, 186 Wash. 167, 57 P.2d 405, 406, the policy which insured against death from injuries, defined injury as used in the policy to mean bodily injury which was the sole cause of the loss and which was effected solely and exclusively of all other causes through external, violent and purely accidental means: Another paragraph of the policy provided: " 'This policy does not cover: * * * injuries * * * of which there shall be no visible contusion, wound, or other marks or evidence of injury on the exterior of the body at the place of injury * * *.' " The Court treated the latter provision in the policy as an exception to the risk assumed, as to which the insurer carried the burden of proof. See, also, O'Neill v. Metropolitan Life Ins. Co., 345

Pa. 232, 26 A.2d 898, 142 A.L.R. 742 and Griffin v. Prudential Ins. Co., 102 Utah 563, 133 P.2d 333, 144 A.L.R. 1416.

It follows that if Section 1 of the policies in suit, defining accidental death as evidenced by a visible contusion or wound on the exterior of the body can be said to be an exception to the general coverage for death through accidental means, the beneficiary need only prove facts from which accidental death can be inferred, and it is upon the insurer to prove as an affirmative defense that the accidental death was not evidenced by an external contusion or wound. See Justice Wolfe concurring in Griffin v. Prudential Ins. Co., supra, 133 P.2d at page 337.

But the courts generally draw a distinction between insurance contracts which by their terms specifically except or exclude from the coverage death resulting from specified causes and contracts which by their terms inclusively define the type and kind of accidental death insured against. Fidelity Mutual Life Ins. Co. v. Powell, 4 Cir., 74 F.2d 525; Mutual Life Ins. Co. of New York v. Sayre, 3 Cir., 79 F.2d 937; Massachusetts Mutual Life Ins. Co. v. Pistolesi, 9 Cir., 160 F.2d 668; Travelers Insurance Company v. Ansley, 22 Tenn. App. 456, 124 S.W.2d 37; Paist v. Aetna Life Ins. Co., D.C.E.D.Pa., 54 F.2d 393, affirmed, 3 Cir., 60 F.2d 476; Pope v. Lincoln Nat. Life Ins. Co., 8 Cir., 103 F.2d 265. In our case the insurance company undertook and agreed to cover a specified and particular kind of accidental death, namely, one which was evidenced by a contusion or wound on the exterior of the body. It did not undertake to exclude from the coverage the type of death which is not evidenced by a visible contusion or wound; instead it never assumed the risk. Therein lies the distinction between the burden of proving a case under an assumed risk and the duty to defend under an exception.

After describing the risk as death from bodily injury solely through accidental means evidenced by a visible contusion or wound on the exterior of the body, the policy contains a proviso that double indemnity shall not be payable if death resulted from "self-destruction, whether sane or

insane, or from military or naval service in time of war, or from any act incident to war, or from engaging in riot or insurrection, or from committing an assault or felony, or from participation in aeronautics, or directly or indirectly from disease or bodily or mental infirmity."

■ We think this is the type of proviso which the Utah courts treat as an exception to the coverage or the risk assumed and as to which they impose the burden of proof on the insurer. It is undoubtedly the construction placed upon the contract by the learned trial judge versed in Utah law, and we cannot say that the Utah courts would take a different view of it.

Appellant complains of the trial court's instruction to the jury defining "contusion" to mean a bruise, and "wound" to mean an injury in which the skin or a membrane of the body is broken, contending that a more liberal construction of the terms would have permitted the jury to find for the beneficiary on the theory that if the insured's death resulted from freezing, such death would have been evidenced by discolorations or morbid changes of the skin amounting to bruises and contusions as used in the policy. See Warbende v. Prudential Ins. Co. of America, 7 Cir., 97 F.2d 749, 753, 117 A.L.R. 760, wherein it is said a wound has been defined as a lesion of the body which according to the dictionary definition is " 'Any morbid change in the structure of organs or parts; hence the diseased or injured region.' " This definition excludes the necessity of a break or a cutting of the skin and would include an injury to the subcutaneous tissue and to the skin such as scarlet blotches from carbon monoxide poisoning. Appellant contends for this definition.

The Utah courts have not defined either of the terms, but this court following Oklahoma law and taking the dictionary definition, has defined "wound" as an injury to a person in which the skin or other membrane is broken, as by violence, and "contusion" synonymously with bruise, affecting subcutaneous tissue, without breaking the skin. Based on this definition, we rejected the contention that a discoloration of the skin caused from sunstroke amounted to contusion as used in a policy not unlike the one in suit. See Paul Revere Life Ins. Co. v. Stanfield, 10 Cir., 151 F.2d 776.

■ The terms have received different constructions in different jurisdiction and the Utah courts have not spoken. Until they do we must accept the interpretation of the Utah judge supported by our own version of the generally accepted rule.

The appellant contends that, in any event she should be excused from proving any wound or contusion on the theory of impossibility of performance and for the further reason that this clause was inserted in the policy merely to eliminate any possibility of fraud on the company. The short answer is that no litigant can be excused from proving his case because of the unavailability of the proof.

As we have seen, the court instructed the jury that it was not necessary that the body of the insured be found in order for the beneficiary to recover. The jury was permitted to infer from the evidence that the insured's death was accidental and that if the body was found, death would have been evidenced by external bruises or contusions. We think these instructions were imminently fair.

■ From the proof it was equally inferable that death was not accidental within the meaning of the policies, and generally where proven facts give equal support to each of two inconsistent inferences neither of which is established, it is the duty of the court to render judgment against him upon whom rests the burden of proving his case. Pennsylvania Railroad Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819; Mutual Life Ins. Co. v. Hassing, 10 Cir., 134 F.2d 714.

■ Here, however, out of an abundance of caution the issue was submitted to the jury. It was resolved against the plaintiff, and that finding is certainly binding here.

The judgment is affirmed.