365 P.2d 958

Duncan B. BRANOM, Plaintiff-Respondent,

v.

SMITH FROZEN FOODS OF IDAHO, INC., Defendant-Appellant.

No. 8932.

Supreme Court of Idaho.

Oct. 30, 1961.

504

Cox, Ware, Stellmon & O'Connell, Lewiston, for appellant.

Clements & Clements, Lewiston, for respondent.

KNUDSON, Justice.

Respondent, Duncan B. Branom, a farmer in Nez Perce County, commenced this action to recover from appellant, Smith Frozen Foods of Idaho, Inc., damages allegedly resulting from the breach of an oral agreement relative to a crop of green peas.

Under respondent's complaint it is alleged that during February and March of 1957, respondent was solicited by appellant through its agent to raise a crop of Perfection peas on land farmed by respondent; after some negotiation it was orally agreed between the parties that respondent would plant approximately 235 acres of farm land with Perfection seed peas to be furnished by appellant at respondent's expense; that appellant would supervise the raising of such crop; that the crop would be harvested by one, K. O. Anderson; that such crop would be purchased by appellant on the basis of specified sums per ton according to grade; the cost of pea seed and any expense incurred in caring for and protecting the crop, exclusive of planting and harvesting, would be deducted from the amount to be paid by appellant for the crop and the amount remaining to be divided

**506**

equally between respondent and K. O. Anderson.

Respondent further alleged that pursuant to such oral agreement he prepared and planted, in a good and farmerlike manner, approximately 235 acres; that the seed so planted was obtained from appellant; that during the month of July, 1957, the said crop matured and was ready for harvesting; that K. O. Anderson, pursuant to the alleged agreement and at the direction of appellant, entered upon the land where the crop was growing and started to harvest said crop; that shortly after harvesting operations were commenced, appellant notified respondent and K. O. Anderson to cease further harvesting operations; that the crop was rejected by appellant by reason of the presence of a variety of peas in said crop known as "Austrian Peas" which rendered the crop unfit for appellant's purpose.

Respondent also alleged that the seed which had been furnished him by appellant contained the Austrian Peas which produced the objectionable peas in the crop; that respondent performed all the conditions of the oral agreement on his part to be performed; that appellant breached and violated the express and implied warranties of fitness and suitability of the Perfection pea seed furnished respondent by appellant under said agreement causing respondent damages as prayed for.

Appellant denied the material allegations of respondent's complaint and affirmatively alleged that the pea crop involved was planted, grown and protected under a written contract entered into between K. O. Anderson and appellant. Appellant's answer contained 13 separate defenses, of which a portion of the 3rd, together with all of the 8th, 9th and 13th were stricken by order of the court. Appellant also filed a cross-complaint against a third party, Moscow Seed Company, Inc., from whom the seed peas involved had been obtained by appellant.

This action was consolidated for trial with an action filed by K. O. Anderson as plaintiff v. appellant, seeking damages allegedly resulting from appellant's breach of an oral agreement to harvest the identical crop involved in this the Branom action. A verdict in favor of respondent in the sum of $14,152.88 was returned by the jury and judgment entered thereon, from which this appeal is taken.

Appellant assigns as error the action of the trial court in striking appellant's 9th defense and also a portion of appellant's 3rd defense. The stricken portion of said 3rd defense alleges in substance that one, K. O. Anderson, had entered into contracts with appellant for the raising of green pea crops upon lands owned by himself (K. O. Anderson) and also upon lands owned by one, Mary Hep-

ton, in which crops respondent Branom neither had nor claimed any interest whatever. Such allegations did not involve any issue between the parties to this action and were properly stricken.

■ Under appellant's 9th defense it was alleged:

"That a custom exists and has prevailed in Nez Perce County, State of Idaho, for many years, and generally known to all processors and growers of peas in said area, that seed dealers to not warrant seed sold by them as to kind or quality, beyond the price of said seed."

Appellant contends that the seed peas here involved were delivered, planted and the crop therefrom was grown and produced on respondent's land under a written contract between appellant and K. O. Anderson. The contract referred to which is attached to appellant's answer, specifically designates what appellant's responsibilities are as concerns the furnishing of the pea seed. If appellant's contention is correct its obligation relative to the seed would be governed by the provisions of the written contract and evidence of existing or claimed custom would not be admissible to vary or contradict the contract. Gramkow v. Farmers Cooperative Irr. Co., 47 Idaho 578, 277 P. 431; Ehlinger v. Washburn-Wilson Seed Co., 51 Idaho 17, 1 P.2d 188; Puget Sound Nat. Bank v. C. B. Lauch

Const. Co., 73 Idaho 68, 245 P.2d 800. Respondent's action was predicated upon an alleged oral agreement under the terms of which respondent contended that he had agreed to plant whatever pea seed was furnished by appellant. The testimony of respondent that he obtained the seed peas involved from appellant's warehouse or place of business is uncontradicted. Under the issues as framed we do not consider that the striking of said allegations prejudiced appellant in its defense in this action.

We have examined the record relative to the claimed error under appellant's assignments 2, 3 and 4, which relate to remarks made by the trial court, and conclude that such assignments are without merit.

Appellant complains and argues at length that the court erred in consolidating for trial this case with the case of K. O. Anderson v. appellant.

Appellant calls attention to a number of remarks or statements by the court and counsel which appellant contends clearly show that confusion existed in the minds of the court, counsel and inferentially the jury, as to which case the evidence was to be applied and what evidence was not admissible in which case. We do not so interpret the remarks or statements. It must be conceded that when cases are consolidated for trial it sometimes becomes necessary

for court and counsel to make explanatory statements regarding the applicability of some of the evidence.

Under this assignment appellant calls attention to I.C. § 12–605, which provides:

"Whenever two or more actions are pending at one time between the same parties in the same court, upon causes of action which might have been joined, the court may order the actions to be consolidated."

Said statute has, to some extent, been abrogated by I.R.C.P., Rule 42(a), however the court's authority to consolidate actions for trial is not thereby more limited and decisions construing or explaining such a statute are helpful in considering the authority conferred by said rule. The language used in said statute or rule neither directs the consolidation of such actions nor limits the court's authority in that respect. Both the statute and the rule are permissive, not mandatory. A statute containing the identical language as used in I.C. § 12–605 has been repeatedly construed and in Realty Construction & Mortgage Co. v. Superior Court, 165 Cal. 543, 132 P. 1048, 1049, the Supreme Court of California said that:

"The section simply expressly authorizes a court to consolidate cases involving causes of action which might have been joined, where, in its judgment, the interests of justice make it proper that a consolidation should be had."

It is generally recognized that if the actions are such as may be consolidated, and unless by statute or rule consolidation is a matter of right (which is not the situation in this State) the trial court is vested with a discretion to consolidate or refuse to do so, and the exercise of such discretion will not be reviewed except in a case of palpable abuse. 88 C.J.S. Trial § 6, page 24; Realty Construction & Mortgage Co. v. Superior Court, supra; Hassing v. Mutual Life Ins. Co. of New York, 108 Utah 198, 159 P.2d 117; Ward v. Scheeline Banking & Trust Co., 54 Nev. 422, 22 P.2d 358; Fisher v. Nash Bldg. Co., 113 Cal.App.2d 397, 248 P.2d 466; St. George v. Boucher, 84 Mont. 158, 274 P. 489; Thompson v. Mitchell, 128 Wash. 192, 222 P. 617.

This Court has stated that the relative merits of conflicting contentions regarding consolidations of actions for trial can very well be determined by the trial judge by an inspection of the pleadings. Nelson v. Inland Motor Freight Company, 60 Idaho 443, 92 P.2d 790.

 In the instant case, according to their complaints, the causes of action here consolidated arose from the same facts. Both actions are based upon an alleged oral agreement with appellant involving both plaintiffs. Each party plaintiff alleged a

cause of action against appellant based upon the same transaction, originating at the same time and involving the same parties. From the complaints it would appear that the facts in each case would necessarily be established by the same witnesses in both cases. The fact that appellant elected to bring in another party by way of cross-complaint in each case does not change the issues or alleged facts as between appellant and the two plaintiffs involved. Whenever the court is of the opinion that it may expedite its business and further the interests of the litigants, at the same time minimizing the expense upon the public and the litigants alike, the order of consolidation should be made. Hassing v. Mutual Life Ins. Co. of New York, 108 Utah 198, 159 P.2d 117. Our attention has not been called to any prejudicial error resulting from the consolidation of these cases for trial, and we cannot say that the trial court abused its discretion in that regard.

A number of appellant's assignments of error question the proof of agency and authority of one Jack Rew to enter into an agreement on behalf of appellant with respondent as claimed by respondent. Mr. Rew testified that he had been employed by appellant since 1953; during 1957 he was employed as assistant fieldman; his position as assistant fieldman was to work among the farmers "to get them to raise green peas"; he had known respondent for approximately 39 years; prior to 1957 he had a conversation with respondent concerning his raising green peas; he talked with respondent again about raising green peas during January and again in February of 1957; about the month of March he met with respondent, K. O. Anderson and Nelson Howard at respondent's farm; that the purpose of said last mentioned meeting was "to explain to both of them (meaning Anderson and respondent) what was expected".

The witness, Nelson Howard, testified that during 1957 he was employed by appellant as "head fieldman" and had "the responsibility of directing field operations and planting and harvesting of the peas". He testified in corroboration of respondent regarding the alleged oral agreement as follows:

"Q. Do you know or did you know a fellow by the name of Jack Rew?

A. Yes, sir.

"Q. What was Mr. Rew's position with the organization at the time you were connected with it? A. He was a fieldman.

"Q. Was he an assistant to you?

A. Yes.

"Q. Mr. Howard, do you recall meeting with Mr. Branom and Mr. Anderson at Mr. Branom's place approximately the early part of March of 1957 wherein Mr. Branom, Mr. Anderson,

**510**

yourself, and Mr. Jack Rew were present? A. Yes, sir.

\* \* \* \* \* \*

"Q. Would you state just what occurred, what was said, and so forth at that particular time and place, Mr. Howard? A. Well, Mr. Jack Rew and myself talked to Mr. Branom. Mr. Jack Rew did most of the talking and he explained to Mr. Branom that he would like to have Mr. Anderson harvest his crop, on the same basis as if Smith Frozen Foods would harvest it as to the stipulations in a 50-50 contract that was being used at that time.

"Q. What were those conditions, Mr. Howard? A. Mr. Branom was to plant—receive the seed and plant the crop. I'll go back. He was to work his ground, prepare it for the peas, receive the pea seeds, go get the pea seeds, plant the seeds as to the time and direction at the time that we stipulated, and Smith Frozen Foods would furnish men to check the fields for weevil and so forth and so on, and to spray the field. The costs of the spraying, the seed, would be split 50-50 between Mr. Anderson and Mr. Branom. Mr. Anderson would do all of the harvesting. The cost of harvesting would be paid by Mr. Anderson.

"Q. Who was to supply the pea seeds to be used?

\* \* \* \* . \* \*

"A. The pea seed was to be supplied by Smith Frozen Foods."

Said witness Howard further testified that the crop was to be taken possession of by appellant at the viners; that the proceeds of the crop were to be divided between respondent and Anderson 50-50; that thereafter respondent received the seed peas from appellant and planted them under direction of appellant's field department; that he (Howard) examined the growing crop on two occasions; directions were given by him to start harvesting the crop and he personally directed that the harvesting operations stop by reason of the presence of Austrian winter peas in the product.

Appellant complains that the witness Jack Rew was not permitted to testify whether he did or did not have authority as agent to sell peas for appellant other than upon a written contract. In ruling upon such offer the trial court expressed the view that it was a question for the jury to determine whether the parties concerned were operating under an oral or a written contract and whether the making of the alleged contract was within the apparent scope of Mr. Rew's authority.

■ This Court has adhered to the rule that where a principal has, by voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages in that particular business is justified in assuming that such an

agent has authority to perform a particular act and deals with the agent on that assumption, then in theory the principal becomes estopped to deny the agent's apparent authority to do the particular act or acts in controversy. Manley v. MacFarland, 80 Idaho 312, 327 P.2d 758; John Scowcroft & Sons Co. v. Roselle, 77 Idaho 142, 289 P.2d 621; Texas Company v. Peacock, 77 Idaho 408, 293 P.2d 949; Bevercombe v. Denney & Co., 40 Idaho 34, 231 P. 427.

■ It is a general principle of the law of agency, that the principals are bound by the acts of their agents which fall within the apparent scope of the authority of the agents and that the principals will not be permitted to deny the authority of their agents against innocent third parties, who have dealt with those agents in good faith. White v. Doney, 82 Idaho 217, 351 P.2d 380. In the case of Investors' Mortg. Security Co. v. Strauss & Co., Inc., 50 Idaho 562, 298 P. 678, 680, this Court stated:

"The rule is general that a third party dealing with an agent is not bound by restrictions or limitations placed upon the agent of which the third party has no notice."

The fact that appellant's agents directed the commencement of harvesting and the crop as harvested was being delivered to and received by appellant is material evidence that appellant recognized that it had some contractual relationship with respondent.

In Stout v. McNary, 75 Idaho 99, 267 P.2d 625, 627, the rule is stated as follows:

"The principal cannot claim that an agent with apparent authority to act had no such authority when he claims benefits of such agent's acts. He cannot approve the part that is beneficial to him and reject the part that creates a burden."

■ In the instant case it is uncontradicted that on the occasion when the alleged oral agreement with respondent was entered into, not only the assistant fieldman, Mr. Rew, was present, but also appellant's "head fieldman", Nelson Howard. In view of the number of occasions that appellant's representative, Mr. Rew, called upon respondent admittedly in an endeavor to get respondent to raise green peas and then finally, on the occasion when respondent claims the agreement was consummated, to bring with him the head fieldman, it became a question of fact for the jury to determine if the alleged oral contract was entered into by appellant's agent or agents acting within the apparent scope of their authority. Thornton v. Budge, 74 Idaho 103, 257 P.2d 238; John Scowcroft & Sons Co. v. Roselle, supra; Lightner v. Russell & Pugh Lumber Company, 52 Idaho 616, 17 P.2d 349. Under the evidence submitted

we cannot say that the court's rulings complained of constituted prejudicial error.

■■ During the trial V. R. Clements, one of counsel for respondent, testified in substance that a jar of seed peas (which had been left at Mr. Clement's office for some time prior to the trial) was in the same condition at the time of the trial as it was at the time it was left at his office. Over objection V. R. Clements was permitted to make a closing argument to the jury and such ruling is assigned as error. In Sebree v. Smith, 2 Idaho 359, 16 P. 915, 916, this Court quoted with approval from Connolly v. Straw, 53 Wis. 645, 11 N.W. 17, as follows:

"As a general rule, no doubt, attorneys should not be witnesses for their clients. The sentiment of the profession is against it, and for very satisfactory reasons; yet cases may arise, and in practice often do arise, in which there would be a failure of justice should the attorney withhold his testimony. In such a case it would be a vicious professional sentiment which would deprive the client of the benefit of his attorney's testimony."

It must be recognized that it sometimes happens that matters important to the litigation are peculiarly within the knowledge of the attorney conducting the litigation. When there is danger of a failure of justice for want of such evidence the attorney is justifiable in becoming a witness. We quote with approval from Cox v. Kee, 107 Neb. 587, 186 N.W. 974, as follows:

"An attorney is a competent witness for his client, and he may properly testify to mere formal matters, such as to account for the possession of an exhibit, or the like. But if he testifies generally, it is unbecoming for him to examine witnesses, or to address the jury."

See also Swaringen v. Swanstrom, 67 Idaho 245, 175 P.2d 692. In the instant case the attorney's testimony was limited to a formal matter regarding the custody of an exhibit and we do not consider the objection to be well founded.

■ Appellant complains that the court did not give appellant's requested instructions concerning agency. Appellant's requested instructions are not numbered in the transcript and it is somewhat difficult to identify them by the reference given in appellant's brief. The record contains copies of only 37 instructions as having been requested by appellant, but in appellant's brief as many as 51 are referred to. However we have examined the instructions given and requested and we do not agree with appellant's complaint. The principal issue involving agency in this case was whether the making of the alleged oral agreement with respondent was within the apparent scope of the agent's authority.

The instructions given by the court informed the jury that when the acts of the agent "are within the apparent scope of the agent's authority and in the furtherance of the corporation's activities" they are binding upon the corporation itself. Appellant's requested instructions did not cover "the apparent scope of the agent's authority" and no prejudicial error was committed by rejecting them.

■ Appellant claims the court erred in substituting the words "an express" for the word "a" in instruction No. 25, which reads:

> "You are instructed that in order that a sale shall be upon *an express* warranty, there must be two factors present, first, an affirmation of a fact by the seller, with reference to the thing sold, and, second, an intention on the part of the seller that his affirmation shall be a warranty to the buyer." (Emphasis supplied)

The pleadings and theory upon which this case was tried presented an issue as to implied warranty. Under the instruction proffered by appellant it would instruct that "an affirmation of a fact by the seller" was a necessary factor of any warranty whether implied or express. In this connection we call attention to I.C. § 64–115, which provides:

> " * * * 1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

> \* \* \* \* \* \*

> "6. An express warranty or condition does not negative a warranty or condition implied under this law unless inconsistent therewith."

This Court has long recognized the doctrine of implied warranty and in Tomita v. Johnson, 49 Idaho 643, 290 P. 395, 396, said:

> "Where one desiring seed makes known to a dealer his needs for planting, and a selection of seed is made upon recommendation by the seller, there arises an implied warranty that the seed is suitable for the purposes intended. Wapato Fruit & Cold Storage Co. v. Denham, 126 Wash. 676, 219 P. 30."

See also Investors' Mortg. Security Co. v. Strauss & Co., Inc., 50 Idaho 562, 298 P. 678. An affirmation of fact by the seller is not an indispensable fact in the creation of an implied warranty and the court properly corrected the language of the requested instruction before giving it.

**514**

Appellant claims that the court erred in refusing to give each of 30 instructions which were requested by appellant and further erred in giving 10 of the 41 instructions which were given. Some of the instructions complained of pertain to the case of K. O. Anderson v. appellant, which was consolidated for trial with this case.

A substantial number of appellant's requested instructions pertain to the subject of agency, which we have hereinbefore discussed. While some of such requested instructions could have been given without error we are convinced that said subject was adequately covered by the instructions given and that the proof of agency presented by respondent was entirely adequate to justify the jury in concluding as it did that appellant's agent acted within the apparent scope of his authority and that an oral agreement was entered into as alleged by respondent.

Manifestly it would unduly lengthen this opinion if we were to discuss in detail each of the propositions of law urged by appellant's assignments of error. We have considered each of the claimed errors and have confined this written opinion to the pertinent questions here involved.

The jury was informed regarding all the material allegations of respondent's complaint and were instructed that the burden of proof was upon respondent to establish by a fair preponderance of the evidence all such allegations which were denied by appellant. The jury was further instructed to "consider the instructions as a whole and not to pick out any particular instruction and place undue emphasis on such instruction". We are convinced that the instructions of the trial court taken and considered as a whole clearly and expressly left all questions of fact to be found by the jury.

Finding no reversible error, the judgment is affirmed. Costs to respondent.

TAYLOR, C. J., and SMITH, McQUADE and McFADDEN, JJ., concur.